297 So.2d 451 (1974)
B. G. HAIR, d/b/a Hair Flying Service, Plaintiff-Appellant,
v.
CITY OF BATON ROUGE et al., Defendant-Appellant.
BATON ROUGE AIRCRAFT, INC., Plaintiff-Appellee,
v.
CITY OF BATON ROUGE et al., Defendant-Appellant.
Nos. 9810, 9811.
Court of Appeal of Louisiana, First Circuit.
May 28, 1974.
Rehearing Denied July 3, 1974.
Writ Refused September 20, 1974.
*452 Edward V. Fetzer, Asst. Parish Atty., and Joseph F. Keogh, Parish Atty., Baton Rouge, for defendant-appellant.
John V. Parker and Terry H. Miller, Baton Rouge, for intervenor-appellant.
Tom F. Phillips, Baton Rouge, for plaintiff-appellee.
*453 Before SARTAIN, BAILES and VERON, JJ.
Rehearing Denied July 3, 1974 in Docket No. 9810.
VERON, Judge.
Plaintiffs, B. G. Hair, d/b/a Hair Flying Service, and Baton Rouge Aircraft, Inc., filed separate suits seeking injunctions to restrain their lessor, Parish of East Baton Rouge, and its agent, Greater Baton Rouge Airport District, from disturbing their possession of airport property that they had occupied as lessees under written leases. The City of Baton Rouge was also originally made a defendant in each of the suits, but filed exceptions of no cause of action that were maintained and is no longer a party herein. Louisiana Aircraft, Inc., and Joseph F. Rockholt intervened and became aligned with defendants.
Because the legal issues were identical, these suits were consolidated by the trial court. The matter was heard on a rule for preliminary injunction and upon stipulation of the parties that evidence taken would also be considered as having been submitted on the petition for permanent injunctive relief. After ruling on several exceptions and hearing the evidence, the trial judge, for oral reasons assigned, made the rule absolute and permanently enjoined the defendants from initiating action to let the premises under new leases. Motion for new trial was denied and this appeal ensued.

I. FACTS
In 1963, plaintiffs, pursuant to competitive bidding procedures, leased certain facilities at Ryan Airport in Baton Rouge from the Parish of East Baton Rouge through its agent, the East Baton Rouge Airport Commission (now known as the Greater Baton Rouge Airport District). Under the terms of their leases, plaintiffs were granted the right to occupy hangars and other improvements on the airport and utilize runways, taxiways, aprons, roadways, and parking areas in the conduct of their businesses for a period of ten years. The terms and conditions of the leases were identical.
Testimony on behalf of both plaintiffs was to the effect that, because of a policy of the Airport District to refrain from making capital improvements to leased airport facilities, it became necessary for plaintiffs to expend large sums themselves for improvements in order to make their facilities usable and of benefit to the public. During the ten-year term, Baton Rouge Aircraft spent a total of $29,487.59 and Hair the sum of $7,082.33 in improvements on the leased premises.
Before the end of the terms of their respective leases, plaintiffs notified the defendant in writing that they were exercising their alleged options to renew their leases for ten years pursuant to the provisions of LSA-R.S. 41:1217. Proof of the installation and costs of the improvements was furnished, and, in accordance with the requirements of the statute, the first year's rental was tendered. Defendant refused the tender and initiated advertisements, soliciting competitive bids on the property occupied by the plaintiffs. Thereafter, plaintiffs filed these suits to enjoin the Parish and the Airport District from further advertising or accepting public bids or in any other way disturbing their possession of the premises.
The leases in question each stated a term to commence on June 1, 1963, and ending on May 31, 1973. Neither written lease contained any provision for renewal. The judgment of the trial court declared the leases extended through May 31, 1983.

II. ISSUES
Procedurally, defendant objects to the rulings of the trial court in:
(1) Proceeding with the hearing after maintaining an exception of vagueness;
(2) Overruling the exception of unauthorized use of summary proceedings;
*454 (3) Issuing a preliminary injunction and a permanent injunction in the same judgment.
Substantively, the issue for decision on this appeal is whether the trial court was correct in concluding that the statutory option to renew leases of property of a governmental instrumentality provided in LSA-R.S. 41:1217 is controlling in this case.

III. EXCEPTION OF VAGUENESS
Plaintiffs herein filed an amended petition alleging denial of constitutional rights, due process of law and equal protection as an additional and separate cause of action entitling them to the relief prayed for. An exception of vagueness was filed by defendant, directed only toward the allegation added by this supplemental and amending petition. The exception of vagueness was maintained, and plaintiffs chose not to amend, but instead proceeded with their presentation of evidence on the remaining issues raised in the original petition.
Defendant contends that the trial judge erred in not dismissing the entire suit when plaintiffs failed to amend. This contention is without merit. The trial court was correct in allowing plaintiffs to proceed with the hearing on the other legal bases for their suit. La.Code Civ.P. arts. 926, 933 (1960).

IV. EXCEPTION OF UNAUTHORIZED USE OF SUMMARY PROCEEDING
The trial judge herein overruled defendant's exception of unauthorized use of summary proceedings. The substance of defendant's argument that this ruling was in error seems to be that no irreparable loss or injury can be shown by plaintiffs until after a trial by ordinary proceeding to establish their right to remain on the leased property in question. Defendant's contention ignores the fact that summary procedures for preliminary injunctions are specifically designed to prevent threatened immediate and irreparable losses and injuries as well as to remedy harms which have already occurred. In any case, we feel that plaintiffs here alleged facts sufficient to constitute irreparable harm if proved (i. e., defendant was advertising for public bids to grant a lease on the premises occupied by plaintiffs). The allegations of plaintiffs that their peaceful possession of leased premises had been disturbed by defendant's actions were sufficient to support use of summary proceedings for a preliminary injunction in this case. La.Code Civ.P. arts. 926, 3601 et seq. (1960).

V. PELIMINARY AND PERMANENT INJUNCTIONS IN SAME JUDGMENT
The judgment of the trial court granted the preliminary injunction prayed for, required posting of bond therefor, and further granted a permanent injunction against defendant. Defendant contends that the court erred in granting a preliminary injunction with the allegedly ambiguous words "until the permanent injunction issued shall become final appealable".
All parties to these suits agreed to and filed a written stipulation with the court, which reads (in pertinent part) as follows:
"The evidence which is introduced at the hearing on the rule will be considered as offered on the merits for a permanent injunction and the parties do hereby agree that the Court may render judgment on the merits on the basis of the evidence abduced (sic) on the rule for a preliminary injunction with the defendant reserving the right to file such exceptions as it deems appropriate in response to the rule."
Without the stipulation, the trial court would have been in error in issuing a permanent injunction. Penn v. Burk, 244 *455 La. 267, 152 So.2d 16 (1963). Written stipulations cannot affect the powers, duties, and prerogatives of the court, but such agreements, affecting the rights and obligations of the parties, become the law of the case and must be enforced. Wickliffe v. Cooper and Sperrier, 161 La. 417, 108 So. 791 (1926).
Defendant now contends that this written stipulation forbids issuance of a preliminary injunction and allows the court to issue only a permanent injunction. We do not agree. We think the real purpose of the stipulation was as defendant's counsel stated in his brief:
"The portion of the stipulation that allowed the evidence heard on the rule applicable to the trial on the merits or for the permanent injunction was at the insistence of the defendants in order to keep from having to try the case in effect twice."

(Emphasis added.) Nothing in the stipulation forbids issuance of a preliminary injunction herein, and to do so would interfere with the powers of the court. See Wickliffe, supra.
The judgment rendered herein is in proper form.

VI. ON THE MERITS
Plaintiffs were the lessees of the subject property under several leases prior to the lease in question. In fact, both plaintiffs have leased the same property, respectively, for at least twenty-five years. The present leases involved herein provide that each shall commence on June 1, 1963 and end on May 31, 1973. There are no options to renew provided for in either lease. On May 29, 1973, each plaintiff mailed and hand delivered letters to defendant, which were received on May 30, 1973, notifying defendant that they were exercising their option to renew their leases for an additional term of ten (10) years, as provided for by La. R.S. 41:1217. See Exhibits B-R-1 and Hair-1. In these letters, plaintiffs stated they had expended in excess of $7,000.00 and $30,000.00, respectively, for permanent improvements and enclosed their checks for one year's rent in advance, based on the rent for the previous ten (10) years. The record fails to reflect any previous attempt to extend any of the prior leases under the above statute. Nor does the record reflect that defendant had any prior notice that plaintiffs planned to claim the right to an additional ten years under the same terms and conditions of the lease at issue herein until it received the letters from plaintiffs on May 30, 1973. Upon defendant's refusal to renew the existing lease, plaintiffs filed this suit, seeking to enjoin the defendant from advertising for bidding for the property and disturbing their possession of the property.
Plaintiffs contended and the trial judge so held that the expenditure of more than $2000.00 for improvements on the premises by each plaintiff has given them the option to renew their leases under the provisions of La. R.S. 41:1217 (1950), the general public lease law. That section reads as follows:
"All leases executed under the provisions of this part shall be for a period not exceeding ten years and shall provide for an annual rental of not less than one dollar per acre, which shall be payable in cash annually and in advance; provided, however, that any person who leases such land and who, within the ten year term of the lease, or any person who holds a ten year lease in full force as of the date of passage of this Act, adds or contracts for permanent improvements to be constructed or placed on or made to the land in the amount of not less than two thousand dollars may, upon written notification to the lessor and upon a proper showing that such improvements have in fact been made or contracted for, lease such lands for an additional period of not more than ten years, the payment of rentals therefor to be made as hereinabove stated ..."
(Emphasis added.)
*456 The cited provision of the Public Lease Law was held applicable to the instant case by the trial judge in reliance on the decision in Hall v. Rosteet, 247 La. 45, 169 So.2d 903 (1964). The Supreme Court in that case was concerned with the applicability of public bidding requirements to the leasing of airport facilities. In finding that the provisions of La. R.S. 41:1211 et seq., were specifically applicable to airport facilities, and thus public competitive bidding was required for the leasing of such facilities, the Supreme Court also noted that where other statutes are inconsistent with the general leasing law, then La. R.S. 41:1211 et seq., do not apply.
The plaintiffs argue that La. R.S. 41:1211 et seq., is applicable and that they have spent more than $2000.00 for permanent improvements as required by the above statute. The defendant contends that La. R.S. 41:1211 et seq., does not apply and further that if this statute was applicable, the plaintiffs are not entitled to the option provided therein because the alleged permanent improvements made by the plaintiffs are not improvements but were nothing more than repairs to better their business position.
For the reasons hereinafter stated, we do not deem it necessary to decide whether the sums spent were repairs or improvements to qualify for the statutory option under La. R.S. 41:1217.
The issue before the court is whether there are any direct conflicts between the general land leasing laws, La. R.S. 41:1211 et seq., and statutes that specifically control the terms and conditions of leases which the defendant may grant.
Plaintiffs argue that La. R.S. 2:135(3) (1950), Uniform Airports Law, was the statutory authority pursuant to which the Parish executed the leases involved herein. That provision provides that parishes establishing airports may:
"(3) Lease for a term not exceeding twenty-five years such airports or landing fields to private parties for operation, or lease or assign for a term not exceeding twenty-five years to private parties for operation space, area, improvements, and equipment on such airports or landing fields, provided in each case that in so doing the public is not deprived of its rightful, equal and uniform use thereof."
(Emphasis added.)
They argue that the above quoted section in no way purports to exempt airports from the renewal-option provision of La. R.S. 41:1217, and that there is no conflict between La. R.S. 41:1217 and any other provision of the Uniform Airports Law. In fact, they contend that, among all the special leasing statutes pertaining to airports, there is no reference to what rights a lessee has after he has expended substantial sums to erect permanent improvements on the leased property.
Defendant argues that La. R.S. 2:601 et seq. (1950), the Airport Authorities Law, is the applicable law and Section 605(C) provides as follows:
"Notwithstanding any other provisions of law to the contrary, all land leased by an authority created under the provisions of R.S. 2:602, shall be made by public bid after advertisement in the official journal of the parish once a week for three consecutive weeks ..."
Defendant then argues that as pointed out in the Hall case, supra, the specific provisions of the Airport Authorities Law take precedence over inconsistent provisions of the general land lease law.
Defendant contended that the Airport Authorities Law, La. R.S. 2:601 et seq. (1950), and Act 151 of the 1969 Legislature are special leasing statutes which give the defendant and the Airport District discretionary authority to enter into leases which contain terms contrary to the provision of La. R.S. 41:1217. It is also argued that the Airport Authorities Law supersedes the option provision of 41:1217, *457 thus making the Hall case, supra, inapplicable. However, these arguments ignore the fact that the only statutory authorization for the defendant to execute these leases is contained in the Uniform Airports Act, La. R.S. 2:131 et seq. The old Baton Rouge Airport Commission, the predecessor of the present Greater Baton Rouge Airport Commission, was created by an ordinance of the East Baton Rouge Parish Council on February 16, 1949, three years before the Airport Authorities Law was passed by the Legislature. (Minutes of the East Baton Rouge Parish Council, Book 26, P. 123).
The only statute relating to airport leases on the books at the time the Airport Commission was established was the Uniform Airports Act. Thus, the Commission was created pursuant to that Act, and is not an "authority" under the Airport Authorities Law. The leases to plaintiffs were not executed by an "authority" created by "the governing body of a subdivision", pursuant to the Airport Authorities Law, but rather were executed by the Parish itself under the authority of the Uniform Airports Act.
Therefore, we find that the Uniform Airports Law, La. R.S. 2:131 et seq., is the proper law to be applied. Thus, we must look to the statutes to determine whether there is any conflict between the Uniform Airports Law and the general land leasing law, La. R.S. 41:1211 et seq., as to the duration of an airport lease. The Uniform Airports Law provides a maximum lease term of twenty-five years, whereas the general land leasing law provides a maximum term of ten years. Had the leases in this case been for a term of twenty or twenty-five years, as provided for by the Uniform Airports Law, would the plaintiffs have been entitled to ten more years under the general land leasing law? We think not. There would be a direct conflict, because the total duration of the lease would have exceeded the maximum authority under the Uniform Airports Law which provides for a maximum duration of twenty-five years.
Especially pertinent to the present case is the court's statement in Hall v. Rosteet, supra, 169 So.2d at page 909:
"... In the performance of this task, we find nothing inconsistent in applying the advertising and competitive bidding requirements of the general law to the leasing of airports. On the contrary, this conforms with the legislative intent since we have concluded that airport leasing is covered by R.S. 41:1212 and the Uniform Airports Law is silent on the subject of advertising and competitive bidding. True, the provisions of the Uniform Airports Law as to the duration of an airport lease, and the acreage which may be leased, being inconsistent with those of the general land leasing law, must prevail over the general law to that extent since it deals with a special type of leasing ..."
(Emphasis added.)
We find this language to be controlling and dispositive of the substantive issues in the instant case. As we stated in Hebert v. Police Jury of West Baton Rouge Parish, 200 So.2d 877 (La.App. 1st Cir. 1967), writ refused, 250 La. 1032, 201 So.2d 520:
"... Recent decisions of our courts have clearly held that the provisions of the Public Lease Law are not applicable to lease agreements entered into by public bodies pursuant to express constitutional or statutory provisions..."
(Citations omitted)
In the case at bar, the leases were entered into in 1963, after public advertising and competitive bidding; such leases were granted by the East Baton Rouge Airport Commission (now the Greater Baton Rouge Airport District) pursuant to its power to grant leases and set the terms and conditions thereof under the provisions *458 of the Uniform Airports Law and the Plan of Government of East Baton Rouge Parish.
We find the special provisions of the Uniform Airports Law with regard to the duration of leases to be inconsistent with the general land lease law. The provisions of the Uniform Airports Law must therefore prevail in the present case.
Each of the leases herein contains an express provision stating that the term is for ten years, ending May 31, 1973. There are no options to renew. The leases have expired.

JUDGMENT IN NO. 9810
For the foregoing reasons, the judgment of the trial court is reversed, and the injunction issued therein is hereby recalled. Plaintiffs to pay all costs.
Reversed.

JUDGMENT IN NO. 9811
For the reasons assigned above, the judgment of the trial court is reversed. Plaintiff to pay all costs of this appeal.
Reversed.