KLIEBERT, Judge.
On March 20, 1979, Almond Lockett suffered an injury to his right knee while in the course and scope of his employment as a truck driver for Pullman Kellogg. Lockett was delivering steel to a job site at the Shell Oil Company plant in Norco, Louisiana. He was standing outside of his truck while it was being unloaded at the site. As he was standing there waiting, a truck owned by J. T. Thorpe Company and being operated by its employee backed into Lock-ett striking his right leg.
Plaintiff filed suit against J. T. Thorpe Company and its liability insurer, The Home Insurance Company, for personal injuries sustained in the accident. Travelers Insurance Company, the insurance carrier for Lockett’s employer, intervened seeking a reimbursement of compensation benefits paid to or on Lockett’s behalf. Counsel for Travelers, counsel for Home Insurance and counsel for Lockett entered into a written and signed stipulation under which Travelers was entitled to receive reimbursement of compensation benefits paid on Lockett’s behalf from any award for personal injuries made to Lockett.
Judgment was entered by the trial court in favor of the plaintiff, Lockett, and against the defendant, Home Insurance Company, for $7,330.87. There was no mention of the stipulation in the judgment. Travelers moved for a new trial because of the failure to honor their stipulation. The motion was denied.
Lockett appealed, seeking an increase in quantum. Travelers, the intervenor, also appealed and assigned as error the trial judge’s failure to recognize the stipulation and reimburse them from the personal injury award to Lockett. The defendants, J. T. Thorpe Company and Home Insurance *232 Company, have neither appealed nor answered plaintiff and intervenor’s appeal. Hence, the defendant’s liability is fixed and is not an issue on this appeal. Home Insurance Company has deposited the amount due under the judgment in the court registry.
The trial judge concluded the plaintiff proved special damages of $1,220.77 which included lost wages of $673.92, prescribed drugs of $23.95, Dr. W. Brent and Dr. Gess-mer’s charges of $290.00 and Dr. Vial and Dr. Phemister’s charges of $343.00. Dr. Ralph Gessner and Dr. Thurman Phemis-ter’s depositions, both taken on June 16, 1980, were filed in evidence at the trial. The trial was left open for the taking and submission of Dr. Raoul G. Reye’s (a general surgeon) deposition. The deposition was taken on July 21, 1980 and submitted in evidence by the defendant on October 1980.
Dr. Gessner, an orthopedic surgeon, first saw Lockett on October 5, 1979. At the time, he was under Dr. Vial’s treatment. He complained about locking of the knee joint and medial joint line pain. On the initial physical examination, he found some crepitance with palpitation of the knee and the x-ray indicated some areas of degenerative osteoarthritis. Although he originally considered Lockett for an exploratory ar-throtomy, this was subsequently ruled out, preferring to treat Lockett on a conservative basis. In mid 1980, he found atrophy of the right leg. Additionally, he added to his previous diagnosis chondromalacia of the patella. He advised continued conservative treatment while restricting all activities which required bending of the knee. If pain persisted, his advice would be to remove the knee cap. Since Lockett was 45 years of age, he would normally expect to find some degenerative disease of the knee joint, but trauma to the knee could cause the disease to be more active. The last few times he saw Lockett before giving the deposition, he believed Lockett would have been unable to work, but as of the timé he gave his deposition, he believed Lockett was able to return to work as a truck driver.
Dr. Thurman Phemister was engaged in the general practice of medicine with Dr. Vial who first saw Lockett in May, 1979. Dr. Vial had administered steroid injections in the knee, anti-inflammatory medication, mild pain medication, knee supports, a knee brace for over a month and diathermy treatments. Lockett was first seen by Dr. Phemister on June 4, 1979. The only pain he could ever elicit was over the medial joint line. Although the patient complained of locking of the knee, he could never elicit the locking. He continued the same treatment as Dr. Vial. When it became apparent the treatment was not doing much good, he referred him to Dr. Gessner. His final diagnosis was traumatic arthritis. However, he could not tell whether it was superimposed on degenerative osteoarthritis. Dr. Phemister found no objective symptoms. Only subjective symptoms of pain and locking were found.
The substance of Dr. Reyes’ testimony was that Lockett had been treated by him for problems other than the knee. In giving his history, Lockett did mention his knee injury to Dr. Reyes. He gave Lockett a full disability rating for a back injury on April 22, 1980.
Based on the medical evidence, the trial judge awarded $6,000.00 in general damages. Appellant argues the award was inadequate because the trial judge made erroneous observations as to Lockett’s credibility. The trial judge may have been in error in the conclusions drawn, however, we cannot say he abused his discretion in setting the amount of the award.
Under the standard of review set by the Supreme Court in Reck v. Stevens, 373 So.2d 498 (1979), in the absence of an initial determination that the trial court abused its discretion in awarding general damages, the reviewing court should not disturb the trier’s award. Before we can disturb the trier’s award, the record must clearly reveal he abused his discretion. Perniciaro v. Brinch, 384 So.2d 392 (1980). Although it is apparent Lockett sustained traumatic arthritis of the right knee, there is some question as to its severity and whether it was *233 superimposed on degenerative osteoarthritis. The diagnosis of Lockett’s injuries was based on subjective system rather than objective system. As concluded by the trial judge, the medical treatment did not gain momentum until the year following the accident. Under the circumstances, we cannot say the trial judge abused his discretion in setting the award for general damages.
Travelers, the intervening compensation carrier for Lockett’s employer, assigns as error the trial judge’s refusal to recognize the stipulation of the parties. We agree the trial judge erred. The stipulation signed by counsel for all parties and filed in the record provided as follows:
“Now into Court, through undersigned counsel, come all parties to this lawsuit and stipulate as follows:
That Almond Lockett was employed by Pullman-Kellogg on or about March 20, 1979 when he was injured within the course of his employment; that The Travelers Insurance Company was the compensation insurer of Pullman-Kellogg; that under the terms of its’ policy, The Travelers Insurance Company has paid to Almond Lockett NINE HUNDRED SIXTY-SIX AND 74/100 ($966.74) DOLLARS in medical benefits; that The Travelers Insurance Company is subrogated to the extent of its’ past and future payments and that in the event that there is judgment in favor of plaintiff herein, Almond Lockett and against defendants herein, that the compensation lien of The Travelers Insurance Company will be recognized and additionally that if the judgment exceeds the amount of benefits already paid to Almond Lockett, then The Travelers Insurance Company will be given a dollar for dollar credit against such judgment as to the amount Travelers has paid.”
A stipulation is a judicial confession and amounts to full proof against those who made it. Civil Code Article 2291. Although written stipulations cannot affect the powers, duties and prerogative of the court, stipulations become the law of the case and must be enforced. Wickliffe v. Cooper & Sperrier, 161 La. 417, 108 So. 791 (1926); Hair v. City of Baton Rouge, 297 So.2d 451 (1st Cir. 1974), writ refused, 300 So.2d 183 (La.App.).
Accordingly, the judgment of the trial judge is amended to provide that Travelers is entitled to receive reimbursement from Lockett for compensation benefits paid to or on behalf of Lockett as a result of the injury of March 20, 1979 and as thus amended, the judgment is affirmed. Each party is to bear his own cost of the appeal.
AMENDED AND AFFIRMED.