LOTTINGER, Judge.
This is an action styled “Petition for Return of Deposit,” but in truth and in fact it is an action ex contractu. The action involves a contract executed in 1946 between the City of Baton Rouge and Belfair Homes, Inc. Plaintiff, Chester D. Wells, purchased the contractual rights of Belfair Homes, Inc., at a sheriff’s sale in 1954 and sued to enforce the contract. From judgment of the trial court in favor of plaintiff, defendant has appealed.
FACTS
The following facts were stipulated at trial:
“1.
“In October of 1947, Belfair Homes, Inc., deposited a total of $79,419.31 with the City of Baton Rouge as the net amount needed to pay for the costs of constructing a sanitary sewer system by the City of Baton Rouge in Belfair Homes Subdivision. Subsequently, the City of Baton Rouge supervised and had this sewer system constructed as part of the whole sewer system in the City of Baton Rouge.
“2.
“The deposits were made in compliance with the terms and conditions of a contract dated December 5, 1946, a copy of which is attached to the original petition and marked P-1 for identification, and which is made a part of this stipulation by reference.[1]
*1186 “3.
“The City of Baton Rouge subsequently caused plans and specifications to be prepared, advertised for the construction, and let the contract for the completion of the system. The actual cost of completion of the system after it was accepted by the City of Baton Rouge was $79,419.31.
“4.
“After having utilized the funds for the extension of its sewerage system, the City of Baton Rouge, acting through its Commission Counsel [sic], on November 10, 1948, acknowledged receipt of the funds and agreed to refund them to Belfair Homes, Inc., as evidenced by the Ordinance dated the same day, the entire ordinance being quoted in paragraph 5 of plaintiff’s original petition and which is made part of this stipulation by reference.[2] This ordinance specifically obligated the City of Baton Rouge to refund the sum of $79,419.31 to Belfair Homes, Inc., whenever any sewer bond funds are available to repay them. A photocopy of the ordinance is attached and its authenticity stipulated to by the parties.
“5.
“The development of Belfair Homes Subdivision and construction of the sewer system in that subdivision helped the City of Baton Rouge meet a serious housing shortage which existed at the time, and resulted in a ‘substantial increase’ in property tax assessments being added to the City’s tax rolls.
“6.
“The sewerage system constructed in Bel-fair Homes Subdivision has been used by the City of Baton Rouge as a part of the entire sewerage system of the City continuously since the completion of the subdivision and the sewerage collection system.
“7.
“On November 23, 1948, an election was held in City of Baton Rouge which submitted to the- qualified property tax payers the question of issuing $250,000.00 in sanitary sewer bonds of the City of Baton Rouge, which election had been called by virtue of a resolution of the Commission Council dated November 19,1948. A photocopy of the resolution is attached and its authenticity stipulated to by the parties.
“8.
“One of the purposes of the proposed bond issue was to refund certain subdivid-ers, including Belfair Homes, Inc., for the installment of sanitary sewerage in certain subdivisions within the City of Baton *1187 Rouge, and the election called for November 23,1948, was duly held and the proposition submitted failed to carry.
“9.
“By ordinance adopted by the Parish Council in 1959, the Greater Baton Rouge Consolidated Sewerage District was created as successor to the City of Baton Rouge with respect to the sewerage facilities within the boundary comprising the consolidated sewerage facilities including specifically Belfair Homes Subdivision, and the Parish Council was made the governing authority thereof, all as indicated by a copy of Resolution Number 3131, a copy of which is attached hereto and made a part hereof. A certified copy of the ordinance is attached and its authenticity stipulated.
“10.
“At the same time as the Consolidated Sewer District was created, the Parish Council authorized, and the people subsequently ratified by special election, the issuance of revenue bonds by the said District for the purpose of constueting [sic] sewers and sewerage works within the City of Baton Rouge and the Greater Baton Rouge Consolidated Sewer District,[3] all as is evidenced by the certified copy of resolution number 3137, 3138, and 3190, which are attached hereto and made a part hereof.
“11.
“The Greater Baton Rouge Consolidated Sewer District Debt Service Fund has the authority to levy taxes for payment of bonds and interest.
12.
“As of March 31,1975, the Greater Baton Rouge Consolidated Sewer District Fund contained an unappropriated balance of funds in the amount of $51,899.52; the 1965 Capital Improvements Program Fund contained a balance in excess of $3,000,000.
“13.
“Chester D. Wells, acquired the aforesaid $79,419.31 claim by Sheriffs Sale, dated May 7, 1954, under and by virtue of a writ of fieri facias issued out of the 19th Judicial District Court in a suit entitled, ‘American Motorists Insurance Company vs. Belfair Homes, Inc., et al.’ ” (Attachments in paragraphs 7, 9, and 10 omitted.)
TRIAL COURT
In 1968, Mr. Wells filed the instant suit which is identical to an earlier suit filed and abandoned in 1955. In the instant suit, the City of Baton Rouge filed several peremptory exceptions, all of which were overruled by the trial court. Later, a Motion for Summary Judgment filed by Wells was granted by the court. This court, in an unpublished opinion, reversed and remanded the matter for trial. The trial court, after trial in which most of the evidence was stipulated, signed a judgment in December of 1981 in favor of plaintiff. This appeal followed.
SPECIFICATION OF ERRORS
Defendant-appellant, the City of Baton Rouge, asserts that the trial court erred in ruling:
*1188 1. that the contract between the parties did not contain a suspensive condition that reimbursement would be made only from the proceeds of the bond issue authorized for the purpose of that reimbursement,
2. that the City was liable to reimburse plaintiff from funds from any sewer bond issue,
3. that the bond issue of 1959 was available for the reimbursement of plaintiffs, and
4. that the City was liable for reimbursement from bond issues even though no money remained from those particular bond issues.
SPECIFICATIONS OF ERRORS 1 AND 2
Basically, defendant-appellant argues that the language of the original contract between the City and Belfair Homes, Inc. evidences the intent of the parties that reimbursement of the funds advanced by Belfair would occur only if a bond issue was floated for that specific purpose, as was the situation with the unratified 1948 bond issue. Defendant-appellant asserts the trial court erred in finding the understanding of the parties was that reimbursement would be made from any sewer bond funds whenever same were available.
The City argues that the ordinance passed on November 10, 1948, acknowledging the advances made by Belfair, and promising reimbursement “... whenever any sewer bond funds are available for that purpose[,]” should be read within the context of the original contract.[4] Thus, inasmuch as the 1948 bond issue failed to carry, and no other bond issue for the purpose of reimbursing Belfair has ever been proposed, the City contends that the suspensive condition in the contract has not occurred and its obligation of reimbursement has not become exigible. The City further contends that the contracting parties did not contemplate reimbursement from sewer bond issues floated for purposes of new construction, as was the 1959 bond issue.
We need not inquire into the intent of the contracting parties. Paragraph 4 of the joint stipulation entered into at trial reads in part, “this ordinance [i.e., that of November 10, 1948] specifically obligated the City of Baton Rouge to refund the sum of $79,-419.31 to Belfair Homes, Inc., whenever any sewer bond funds are available to repay them.” (emphasis supplied) The parties therefore stipulated the nature of the City’s obligation under the 1948 ordinance acknowledging Belfair’s contractual right of reimbursement, and such stipulation is binding. See Hair v. City of Baton Rouge, 297 So.2d 451, (La.App. 1st Cir.1974) app. den. 300 So.2d 183 (La.1974).
The trial court found that plaintiff was to be reimbursed whenever any sewer bond funds were available. This finding was entirely consistent with the stipulation entered into at trial, and is not erroneous. The question which remains, and which is dispositive of the case sub judice, is whether any sewer bond funds became available to repa.y plaintiff.
SPECIFICATION OF ERROR 3
By this specification, defendant-appellant argues that the trial court erred in finding that funds generated from the 1959 bond issue were available for the reimbursement of plaintiff.
In May of 1959, the Parish Council submitted two propositions to the public on behalf of the Greater Baton Rouge Consolidated Sewer District.[5] The first proposition was for a bond issue of $21 million for constructing sewers and sewerage disposal works. The second proposition involved whether the Consolidated Sewer District would assume certain outstanding debts of those underlying sewer districts which precede the consolidated district. The resolution of the Parish Council placing the second proposition on the ballot indicated that its adoption was contingent upon the passage of the $21 million bond issue.
The trial judge stated in written reasons that the second proposition on the May 19, 1959, ballot provided for the Consolidated *1189 Sewer District to assume all outstanding sewer district debts, upon completion of the $21 million bond issue. This interpretation assumed that the second proposition, in accordance with La.R.S. 39:577,[6] provided a new purpose for proceeds of the 1959 bond issue, once construction of sewers and sewerage works was completed. The trial judge further found that the second proposition was an assumption of all underlying indebtedness payable through ad valorem taxes.
The City argues that the second proposition assumes only indebtedness incurred through specific past bond issues by underlying sewer districts.
An examination of the second proposition indicates that the voters ratified a proposal to assume indebtedness incurred through certain bond issues by underlying districts. These past bond issues were specifically enumerated in the second proposition. The indebtedness to plaintiff, which did not arise from the designated past bond issues, was not within the purview of the second proposition. Thus, assuming arguendo the trial judge was correct in his interpretation that the second proposition created a new purpose for the use of the 1959 bond issue, the trial court erred in ruling that proceeds of the 1959 bond issue became available to reimburse plaintiff once construction was completed.
As stated above, the parties stipulated that plaintiff would be reimbursed whenever any sewer bond funds were available, and we rejected the City’s argument that the parties agreed to reimbursement only if a bond issue was floated for that specific purpose. However, even though we find that such a restriction was not part of the City’s stipulated obligation, La.R.S. 39:577 creates almost identical restraints. Even if a bond issue is floated for original purposes other than reimbursing plaintiff, under the statute these proceeds cannot become available to reimburse plaintiff unless and until the public approves using idle proceeds for such a purpose.
It is undisputed that no sewer bond issue for the specific purpose of reimbursing plaintiff was ever passed. The bond proposition of 1959 had as its express purpose “constructing sewers and sewerage disposal works,” which we interpret to mean the construction of new sewers and new sewerage disposal works only, and not the paying for existing sewers. Thus the paying for existing sewers was not within the call of this bond issue. La.R.S. 39:577. Additionally, even assuming arguendo that the second proposition submitted in 1959 created a new purpose of 1959 bond proceeds (as per La.R.S. 39:577), the debt owed to plaintiff was not among the specifically enumerated outstanding debts assumed. Moreover, the record indicates that proceeds from the 1965 bond issue for the Capitol Improvements Program went into a separate City-Parish fund entirely unrelated to the Greater Baton Rouge Consolidated Sewer District Fund. Thus, idle funds from the 1965 bond issue for capital improvements were not “sewer bond funds” available for reimbursing plaintiff. Inasmuch as the record does not indicate that any sewer bond funds have ever become available to reim *1190 burse plaintiff, either through a bond issue for that specific purpose, or by the method proscribed in La.R.S. 39:577, we find that plaintiff cannot recover the advances made by Belfair Homes, Inc., since the suspensive condition of the City’s obligation has not yet occurred.
In light of this holding, discussion of defendant-appellant’s specification of error 4 is expressly pretermitted.
Therefore, for the above and foregoing reasons, judgment of the trial court in favor of plaintiff-appellee Chester D. Wells in the sum of $79,419.31 is hereby reversed. There is now judgment in favor of defendant-appellant the City of Baton Rouge, dismissing plaintiff-appellee’s suit at his costs in the trial court and in this court.
REVERSED AND RENDERED.

. The contract between Belfair Homes, Inc. and the City reads in pertinent part:
“In regard to sanitary sewers, detailed plans and specifications must be furnished by the Contractor and contract let at public bid by the City of Baton Rouge and the necessary funds therefor shall be furnished the City of Baton Rouge in advance of letting said contract, which amount the City will reimburse the Contractor without interest if, as and when a bond *1186 issue is floated for the purpose of paying for the sanitary sewers." (emphasis supplied)

. The ordinance adopted reads as follows:
BE IT ORDAINED by the Commission Council of the City of Baton Rouge, Louisiana, that WHEREAS, the property owners of Belfort and Belfair Subdivisions did petition the Commission Council to construct a sewer system on streets in said subdivisions, said sewerage system to be a part of the whole system of the City of Baton Rouge, and the City having no available funds at this time to pay the costs thereof, and
WHEREAS, the property owners, namely, the Northside Realty Company and the Belfair Homes, Inc. & American Motorists Insurance Company, advanced to the City of Baton Rouge the amounts needed to pay the costs of said sewer extension upon the condition that the City of Baton Rouge reimburse them for same whenever any sewer bond funds are available for that purpose, and
WHEREÁS, in accordance therewith, the City of Baton Rouge caused the plans and specifications for said work to be prepared, did advertise for said construction and did let the contract, which contract was completed and accepted by the City of Baton Rouge, the cost of same having been advanced by the following persons in the following amounts, to-wit:
NORTHSIDE REALTY COMPANY $4,040.38
BELFAIR HOMES, INC., and
AMERICAN MOTORISTS INS. CO. $79,419.31
NOW, THEREFORE, BE IT ORDAINED by the Commission Council of the City of Baton Rouge, Louisiana, that the said City does hereby acknowledge the advance made to it by the above listed property owners in the amounts above set forth making a total sum of $83,-459.69 for the purpose of constructing said sewers for the City of Baton Rouge in Belfort and Belfair Subdivisions, and the City of Baton Rouge does hereby agree to pay and refund the above amounts, without interest, to the said parties listed above in the amounts listed opposite their respective names, whenever any sewer bond funds are available for that purpose. Thus adopted this 10th day of November, 1948.

. In the 1959 election, two propositions were submitted to the public. The first read as follows:
“Shall Greater Baton Rouge Consolidated Sewer District incur debt and issue bonds to the amount of 21 million to run thirty years from date thereof, with interest at the maximum rate of 5% per annum, for the purpose of constructing sewers and sewerage disposal works in and for said district, title to which shall be in the public, such bonds to be sold only at such time or times and in such amounts as the Parish Council may determine advisable to effect the contemplated construction program?”
The second proposition read in pertinent part as follows:
“Shall Greater Baton Rouge Consolidated Sewerage District assume the outstanding debt of the following underlying sewerage districts: “All outstanding sewer bonds of that district known as the old City of Baton Rouge as it existed prior to January 1, 1949, being the bonds remaining outstanding of an original issue of bonds dated December 1, 1930:
“All outstanding bonds of Sewer District # 1...”
(The remainder of the second proposition contained a listing of the original sewer districts, 1-9, and posed the question whether or not the City should assume the outstanding debts of bonds issued by each of those particular districts during the years ranging from 1930 through 1948.)

. See footnote 1, infra.

. See footnote 2, infra.

. La.R.S. 39:577 reads as follows:
“The proceeds of the sale of bonds issued under the provisions of this Sub-part shall constitute a trust fund to be used exclusively for the purpose or purposes for which the bonds are authorized to be issued, but the purchaser of the bonds shall not be obliged to see to the application thereof. In the event that all or part of the proceeds of the sale of such bonds are no longer needed for the purpose for which the bonds were authorized to be issued, the governing authority of the subdivision which has issued such bonds may use the proceeds of the sale of such bonds for a purpose different from that for which the bonds were originally issued, provided that such new purpose is one for which the bonds could have been issued in the original instance and provided further that such proposed action shall have been approved by a majority in number and amount of the qualified property taxpayers voting at an election held in the manner provided by the provisions of this Chapter for authorizing bonds. In the event any governing authority has, prior to May 1, 1950, taken action substantially like that herein provided in order to obtain authorization to use the proceeds of the sale of bonds for a purpose different from that for which the bonds were originally issued, such action is hereby approved, validated and ratified.”