WICKER, Judge.
Judy A. Chauvin and Glenn A. Chauvin, husband and wife, appeal the dismissal of their claims against the Associated Catholic Charities of New Orleans, Inc. on a motion for summary judgment. The issue is Catholic Charities’ alleged status as statutory employer. We reverse and remand.
Judy Chauvin is a long-time employee of the Jefferson Parish School Board who has been for some years assigned as a teaching assistant at Hope Haven/Madonna Manor. This is a residential institution for emotionally disturbed and learning-disabled children operated by Catholic Charities. While she was on duty, Chauvin was attacked and seriously injured by one of the children.
She and her husband sued the School Board and Catholic Charities, she for her injuries and he for loss of consortium. They alleged causes of action in negligence and intentional tort. They also alleged with respect to Catholic Charities that it was the "legal guardian or tutor” of the child. The School Board sought and obtained dismissal from the suit as Chauvin’s statutory employer and is no longer a party-
Catholic Charities filed a motion for summary judgment on the same grounds, alleging Chauvin was a “borrowed servant” and relegated exclusively to relief under the Worker’s Compensation Act. A supplemental memorandum raised a “two-contract” defense. La.R.S. 23:1032 and 23:1061. The trial judge ruled in favor of Catholic Charities and found a statutory employer relationship.
The work performed by Hope Haven/Madonna Manor is part of Associated Catholic Charities of New Orleans, Inc.’s usual trade, business and occupation. Ms. Chauvin was engaged in that work at the time of the attack.
Mr. Chauvin’s claim for damages, including loss of consortium, must also be dismissed. The worker’s compensation law prohibits suits by a spouse against the employer of the other spouse for loss of consortium arising from an injury incurred during the course and scope of the injured spouse’s employment. (Citations omitted).
In her appeal Chauvin alleges that there are “unresolved questions pertaining to the relationship of the parties” and that the case record includes “[injsufficient data to resolve the issue of the employment relationship.”
A summary judgment should be granted only “if the pleadings, depositions, *1361 answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact.” La.C.Civ.P. art. 966; Howard Trucking Co., Inc. v. Stassi, 474 So.2d 955 (La.App. 5th Cir.1985), aff’d, 485 So.2d 915 (La.1986), cert. den. 479 U.S. 948, 107 S.Ct. 432, 93 L.Ed.2d 382 (1986). The materials before the court must be viewed in the light most favorable to the parties opposing the motion, and the mover must be entitled to judgment as a matter of law. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The statutory employer defense is an affirmative one, and Catholic Charities has the burden of proving it. Jackson v. Louisiana Power & Light, 510 So.2d 8 (La.App. 5th Cir.1987), writ den. 514 So.2d 134 (La.1987).
In support of its motion for summary judgment, Catholic Charities submitted the affidavits of the principal-assistant administrator and the administrator of Hope Haven/Madonna Manor, Barbara Garland and Robert Guaseo. Those affidavits allege that they are employed by Catholic Charities at Hope Haven/Madonna Manor; that they are responsible for the day-to-day operations of Hope Haven/Madonna Manor; that pursuant to a contract with the State of Louisiana Catholic Charities operates an institution for housing, treating, and/or schooling children; that Chauvin worked as a teachers’ assistant at a special education school on the campus; that in the exercise of their responsibilities as principal-assistant administrator and administrator they exercised control of the teachers and teachers’ assistants, such as Chauvin; that as a part of Hope Haven/Madonna Manor’s customary business, they administered the school and issued instructions directly to the teachers and teachers’ assistants; and that the School Board only assigned Chau-vin to teach at Hope Haven/Madonna Man- or under the affiants’ control.
A second affidavit, of Garland alone, alleges that she had personal knowledge of the facts contained; that Hope Haven/Madonna Manor was owned and operated by Catholic Charities; that a contract was in effect “prior to, on and after January 28, 1985” (the date of the attack) between the state and Hope Haven/Madonna Manor/Catholic Charities to provide care and education for needy children; that a second contract was in effect “prior to, on, and after January 28, 1985,” between Hope Haven/Madonna Manor/Catholic Charities and the Parish of Jefferson/Jefferson Parish School Board for the furnishing of teachers and teachers’ assistants; that Chauvin was one of the teaching assistants employed pursuant to this latter contract; and that on the date of the attack Chauvin was performing duties which “were part of the regular trade, business or occupation” of Catholic Charities/Hope Haven/Madonna Manor pursuant to the two contracts.
The two contracts referred to were not attached to the affidavits, filed into the record as pleadings, or introduced into evidence. Instead, on the date of the hearing, Catholic Charities proferred an unsigned and undated copy of the alleged agreement between the School Board and Hope Haven/Madonna Manor. In addition, it appended to its brief a copy of the alleged contract between the State of Louisiana and Hope Haven/Madonna Manor Catholic Charities which had apparently expired in June 1984, six months before Chauvin was attacked and injured.
Catholic Charities also introduced Chau-vin’s deposition in support of its motion for summary judgment. She testified that she was employed by the School Board and assigned to Hope Haven/Madonna Manor since the start of her employment; that her job preparation consisted of two years’ training by the School Board as a paraprofessional working with special education children; that she took these classes after she began working; that she took her instruction on the job from the teacher, Ann Connick; that the teacher took instructions from the principal and the administrator; that some of her other co-workers were employed by Catholic Charities; that she had attended workshops at Hope Ha *1362 ven/Madonna Manor about handling these special children; and that she was receiving worker’s compensation from the School Board.
Additional evidence before the trial judge was an earlier-filed affidavit of the School Board’s Director of Personnel Relations in support of its motion for summary judgment which alleged that Chauvin “was employed by the Jefferson Parish School Board as a teacher assistant assigned to the Hope Haven/Madonna Manor School.”
The two-contract defense, a factual issue is insufficiently proven. A “principal” is defined as “any person who undertakes to execute any work ... which he had contracted to perform and contracts with any person for the execution thereof.” La. R.S. 23:1032. To support this theory, Catholic Charities must show that it contracted with the State of Louisiana to perform work which was a part of its trade, business, or occupation and that it, in turn, contracted with the School Board for the execution of any part of that work. See Jackson v. Louisiana Power & Light, supra. However, neither contract was before the court for consideration. The Code of Civil Procedure mandates that “[sjworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto_” La.C.Civ.P. art 967 (emphasis added). This was not done.
The issue of lack of supporting documentation has been considered by the Second Circuit in Vassallo, Inc. v. Southwestern Packing, 476 So.2d 925, 927 (La.App.1985), which held that affidavits without documents were insufficient to support a summary judgment.
While the record does not conclusively show that the requirements of article 967 were disregarded, we are bound to scrutinize ^he mover’s papers very closely. We will resolve all reasonable doubts against granting a summary judgment. ... We will not indulge in the hypothesis that the supporting documents were verified and attached, when the record does not clearly show this.... (citations omitted).
Two cases which reach a different result, Fidelity Nat. Bank v. Coleman Am. Moving, 398 So.2d 556 (La.App. 1st Cir.1980), and Parish Motors, Inc. v. Reed, 305 So.2d 546 (La.App. 1st Cir.1974), do so because the documents referred to in the affidavits were already present in the record even though they had not been attached to the affidavits themselves.
In order to have immunity from tort suit on its alternative grounds, Catholic Charities must prove that it is a principal. A principal is defined as “any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury_ (emphasis added).” La. R.S. 23:1032; Albin v. Red Stick Const. Co., Inc., 509 So.2d 110 (La.App. 1st Cir.1987). If the work being done by the employee for the principal is specialized, that work is not considered part of the principal's trade, business or occupation. Berry v. Holston Well Service, Inc., 488 So.2d 934, 938 (La.1986), held:
The central question to be answered is whether the contract work is specialized or non-specialized. This of course is a question of fact, and courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field. If it is determined that the contract work is specialized per se, as a matter of law the work is not a part of the principal’s trade, business or occupation, and the principal is not the statutory employer of the specialized contractor’s employees (emphasis by the court).
Whether or not the work of teaching assistant is specialized or not is a material factual issue. Since there has been no evidence on this point, it cannot be resolved by a summary judgment. La.C.Civ.P. art. 966.
One of the factors to be considered in making the “specialized work” determination is whether the principal has the manpower capable of performing the work. *1363 “Basically, the factors developed by the jurisprudence strive to answer the overriding question of ‘whether [the contract work] is, in that business, normally carried on through employees rather than independent contractors.’ ” Berry v. Holston Well Service, Inc., at 938 (citation omitted). “If the work being performed by the contractor’s employee is customarily performed by employees of the principal, it is a part of the principal’s trade, business, or occupation.” Lewis v. Exxon Corp. 441 So.2d 192, 196 (La.1983).
Catholic Charities has not shown that the work of teaching assistants was or could have been performed by its own employees. The evidence that Chauvin was given special two-year training by the school board tends to establish the contrary. Also, conflicting evidence that Chauvin was either under the direct supervision of a teacher or under the supervision of Catholic Charities’ employees at the school is another factor to be considered. We conclude that there is insufficient evidence from which to make a factual determination that the work of teaching assistant is a part of the trade, business or occupation of Catholic Charities.
We also find the relationship of borrowed employee-employer insufficiently proved.
A prerequisite to any action arising under Workmen’s Compensation Law is the existence of an employer-employee rela-tionship_ Right to control is the essence of this relationship, evidenced by four primary factors:
1. Selection and engagement.
2. Payment of wages,
3. Power of dismissal, and
4. Power of control
Vaughn v. Baton Rouge General Hospital, 421 So.2d 288, 290 (La.App. 1st Cir.1982) (citations omitted). Catholic Charities has not shown that it either selected or engaged Chauvin, that it pays her wages, or that it has either the power of dismissal or control over her. On the contrary, it appears that the School Board hired her and assigned her to Hope Haven/Madonna Manor and that she was on the School Board payroll. On the right to control, as we have previously noted, the evidence conflicts; and a summary judgment is inappropriate.
We also note that Chauvin raised a theory of potential recovery quite apart from the issue of employee-employer, although the litigants have not addressed it in this appeal. She has alleged that the minor child who injured her was under the tutorship or guardianship of Catholic Charities.
The father and the mother and, after the decease of either, the surviving parent, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
The same responsibility attaches to the tutors of minors.
La.C.C. art. 2318. This allegation, while denied by Catholic Charities, has not been put at issue by its motion for summary judgment.
We reverse the summary judgment of the trial court, which dismissed the tort claims of Judy Chauvin and the loss of consortium claims of her husband, Glenn Chauvin, and remand the matter for further proceedings.
REVERSED AND REMANDED.