595 So.2d 728 (1992)
Judy A. Chauvin, Wife of/and Glenn A. CHAUVIN
v.
JEFFERSON PARISH SCHOOL BOARD and Associated Catholic Charities of New Orleans, Inc.
No. 91-CA-686.
Court of Appeal of Louisiana, Fifth Circuit.
February 18, 1992.
Dale W. Poindexter, Poindexter & Oxner, New Orleans, for plaintiffs/appellants.
H. Martin Hunley, Jr., Dwight C. Paulsen, III, Lemle & Kelleher, New Orleans, for defendants/appellees.
Michael D. Meyer, New Orleans, for plaintiff/co-appellant.
Before GRISBAUM, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
In this case the plaintiff has sought damages in tort for injuries incurred when an emotionally disturbed child attacked her in the institution where she was employed. Judy Chauvin, an employee of the Jefferson Parish School Board (JPSB), was a teaching assistant at Hope Haven/Madonna Manor, a residential institution for emotionally disturbed and learning-disabled children operated by Associated Catholic Charities (ACC). She was seriously injured on January 25, 1985, while assisting in a classroom within a locked unit and filed a tort suit against JPSB and ACC. JPSB was dismissed on summary judgment as her direct employer on January 22, 1987, and ACC was dismissed as a defendant on February 8, 1988 for the reason that ACC was her statutory employer and was immune from tort liability. On appeal to this court, the summary judgment dismissing ACC was reversed and the case remanded. Chauvin v. Jefferson Parish School Board, 534 So.2d 1359 (La.App. 5th Cir. 1988). On remand, after a bifurcated trial of liability only, on November 13, 1990 the lower court again found in favor of ACC, dismissing Mrs. Chauvin's claim and holding that her proper remedy was worker's compensation.
*729 The court's reasons for judgment read as follows, in pertinent part.
The testimony of the witnesses and the exhibits introduced into evidence have shown that one of the projects of Associated Catholic Charities is the caring for and educating of special children at Hope Haven/Madonna Manor Institution. The services rendered by Associated Catholic Charities are carried out by its own employees and by contracting with others such as teachers and teaching assistants in the special education situation at Hope Haven/Madonna Manor.
The root power of the services resides in Associated Catholic Charities as an entity. It functions through its agents. It is the Court's opinion therefore that the usual and customary work and/or activities of Associated Catholic Charities are (while not limited to) the educating of those children placed in its care by the State, as mandated.
The existence of a contract (although not being able to be located) binding Associated Catholic Charities with the State of Louisiana, and a contract between the Jefferson Parish School Board and Associated Catholic Charities to provide those services mandated by the State contract have been proven, more probable than not, to exist.
This case fits squarely within the situation envisioned by R.S. 23:1032, 23:1061, et sequitur.
In January, 1985 R.S. 23:1032 read as follows, in pertinent part:
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof. [Emphasis supplied.]
R.S. 23:1061 provided, also in pertinent part:
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; ... [Emphasis supplied.]
Acts 1989, No. 454, § 3 added the following sentence, codifying the jurisprudence:
... The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
The issue before this court is whether or not the court erred in holding that Associated Catholic Charities was immune to tort liability under LSA-R.S. 23:1032 and 23:1061.
The appellant assigns the following errors: (1) admitting a contract into evidence when the contract was not for the period of time when the injury occurred, the original was not produced, and a subpoena had not been issued for the correct contract; (2) admitting testimony about the contents of and existence of a contract; (3) finding that *730 the defendant had met its burden of proof under the two-contract theory; and (4) failing to apply the statutory employer defense restrictively.
The two-contract defense is an affirmative defense of which the defendant has the burden of proof. To be successful ACC must show that it contracted with the state to perform work, i.e. educating the children placed by the state in Hope Haven/Madonna Manor, and then contracted with JPSB to carry out all or part of the work. Aetna Cas. & Sur. v. Schwegmann W. Exp., 516 So.2d 412 (La.App. 1st Cir.1987). If those criteria are met, the general contractor, ACC, is automatically the statutory employer of its subcontractor, JPSB. Williams v. Metal Building Products Co., Inc., 522 So.2d 181 (La.App. 5th Cir.1988), writ denied 530 So.2d 82 (La.1988); Thornton v. Avondale Shipyards, 479 So.2d 7 (La.App. 5th Cir.1985).
It is obvious that proof of ACC's contractual relationships for the 1984-85 school year is essential to its defense. At trial, over the objection of the plaintiff, the court accepted into evidence the following documents: D-2, an agreement between the State Department of Health and Human Resources, Office of Human Development, and Hope Haven/Madonna Manor, Associated Catholic Charities of New Orleans, Inc., to provide and administer a program of treatment and services for children placed there by the state for fiscal year 1983-84; D-3, a transmittal letter from Barbara E. Turner, Director of the Department of Special Education of the Jefferson Parish School System to Barbara Garland, principal of Hope Haven/Madonna Manor, with an unsigned copy of contract between the JPSB and ACC, whereby JPSB would provide special education teachers and teacher assistants for the year 1984-85; and D-4, a copy of D-3, signed only by Sister Anthony Barczykowski as "School Administrator."
La.Code Evid. art. 1004 sets out the exceptions to the general rule that the original writing is required to prove the contents of a writing (article 1002). Article 1004 reads as follows:
The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
(1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;
(2) Original not obtainable. No original can be obtained by any available judicial process or procedure;
(3) Original in possession of opponent. At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing;
(4) Collateral matters. The writing, recording, or photograph is not closely related to a controlling issue; or
(5) Impracticality of producing original. The original, because of its location, permanent fixture, or otherwise, cannot as a practical matter be produced in court; or the cost or other consideration to be incurred in securing the original is prohibitive and it appears that a copy will serve the evidentiary purpose.
The article is described in the Comments as being "generally in accord with prior Louisiana law."
The plaintiffs objected to the admission of the three contracts listed above, because they were not fully executed copies of any contracts in effect at the time of the accident. The court allowed the contracts "for whatever merit or weight they may have as to evidentiary support...." The appellants attack the admission of testimony regarding these exhibits "over Plaintiffs' objections." In fact, our review of the transcript indicates that counsel for the plaintiffs objected to two questions only. Contemporaneous objection is required to preserve an evidentiary issue for appellate review. La Haye v. Allstate Ins. Co., 570 So.2d 460 (La. 3rd Cir.1990), writ denied 575 So.2d 391 (La.1991). Accordingly, this contention has no merit. The plaintiffs further complain that the defendants failed to offer testimony probative of the *731 loss or destruction of the original contracts, if in fact they existed.
Robert Guasco, an ACC employee and overall administrator of Hope Haven/Madonna Manor, testified that he had personally searched the ACC records as well as those of Hope Haven/Madonna Manor but could not find the original signed contracts; that he had asked DHHR to produce its contract but the department was unable to do so; and that JPSB did not have the original of its 1984-85 contract because it was lost in a fire. Testimony from officials in charge of the DHHR and JPSB records would have established the loss of the documents with greater certainty; however, since the defendants' inability to produce the original contracts created problems for themselves, we see no reason to believe the documents were available and were withheld. For that reason we find that the defendants were entitled to submit "other evidence" under article 1004.
Three ACC employees testified as to the existence of the contracts between that agency and the state and between ACC and JPSB.
Robert Guasco testified that the substance in the missing DHHR contract for 1984-85 was the same as that of the 1983-84 copy, D-2. He stated that such agreements had been in effect before January 28, 1985 and from then to the present. The witness identified the signed copy of the agreement between Hope Haven/Madonna Manor and JPSB for 1984-85, along with its letter of transmittal. He stated that that document is a copy of the standard agreement and would have been in effect in January, 1985. He testified that the contract was forwarded by the JPSB director of special education, to the principal of Hope Haven/Madonna Manor for review, then to himself for further review, then to Sister Anthony Barczykowski, Executive Director of ACC, for signature, and finally back to the director of special education for signature by the superintendent of the Jefferson Parish School System.
Barbara Garland, the principal, identified the unsigned JPSB contract. She testified that the contract governed their operation "in terms of teachers being placed by Jefferson and the (sic) supervising them according to Jefferson's policies." She verified Mr. Guasco's testimony as to the routing of the contract for review and signature.
Sister Anthony Barczykowski, testified that as chief of ACC since 1980 she had overall supervision of Hope Haven and Madonna Manor. When asked whether ACC had contracted with JPSB from at least 1980 to the present, she answered in the affirmative. She also confirmed that the contractual relationship with the state concerning the operation of Hope Haven/Madonna Manor had existed for a number of years prior to January, 1985. She had no doubt that a contract was in effect in 1984-85, "inasmuch as the state placed the children and paid for them to be there." We find that the "other evidence" offered by the defendants was properly admitted by the trial court and that it established the existence and contents of the contracts between DHHR and ACC and JPSB and ACC.
The plaintiffs submit next that, assuming for the sake of argument that the court did not err in admitting the contracts and testimony, the defendants have not carried their burden of proof under the two-contract theory. They call our attention to the absence from the state contract of "Exhibit A," which is a proposal, (we assume from ACC) that was attached and made a part of the agreement:
Agency and Provider shall make available services as defined in this Agreement and in a manner consistent with and as set forth in the proposal labeled Exhibit A, which is attached hereto and made part hereof, to certain eligible clients as defined herein and specified in Exhibit A subject to the following provisions:...
The defendants then contend that education planning is all that ACC is called upon to provide in the contract. We find their interpretation to be inaccurate. Another section of the ACC-DHHR contract reads as follows:

*732 II. PROVISIONS FOR CARE OF CLIENT
A. Provider shall provide and administer a program of treatment and/or services for each client in accordance with a Plan specifically designed for the client and documented in the client's case record, which shall maximize the individual's abilities, enhance his capabilities to cope with his environment, enable him to realize his fullest potential, and equip him to live as normally as possible. The Plan shall include educational placement in community public schools unless the client's Individualized Educational Plan requires an alternative placement, in which situation the client's plan shall include planning for educational services consistent with his abilities and needs, taking into account his chronological age and severity of his functional disability. Development of the Plan for a client shall be the joint responsibility of the Provider and Agency.
. . . . .
This paragraph orders ACC to "provide and administer a program of treatment and/or services ..." for each child on an individual basis, in accordance with an Individualized Educational Plan, which may require a placement other than in a regular public school. The contract states further, at III. General Provisions (J):
"Provider shall develop a written agreement with the local Education Agency in its area outlining the method(s) of providing Educational services to all school aged residents in accordance with State and Federal regulations."
We conclude from this statement that the DHHR contract requires ACC to provide educational services to all the children at Hope Haven/Madonna Manor by agreement with the local school system.
In summary, we find that ACC fulfilled the criteria of statutory employer under the two-contract theory by proving that it entered into a contract with a third party, that work was performed pursuant to that contract, and that in order to fulfill its contractual obligation to perform the work it entered into a subcontract with another for part of the work.
For the reasons stated above, the judgment appealed from is affirmed.
AFFIRMED.