633 So.2d 796 (1994)
Angelene J. DAVIS
v.
Gerald G. KREUTZER, et al.
No. 93-CA-1498.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1994.
*797 Robert M. Becnel, Becnel, Landry & Becnel, LaPlace, for plaintiff/appellee.
Nat G. Kiefer, Jr., Nat G. Kiefer, Jr., A Professional Law Corporation, New Orleans, for defendants/appellants.
Collins C. Rossi, Frederick H. Dwyer, Bailey, Rossi & Kincade, Metairie, for intervenor/appellee.
Before BYRNES, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
This appeal arises from a personal injury action filed by Angelene Davis against defendants Gerald G. Kreutzer, Transmit Management of Southeast Louisiana, Inc. (TMSEL) and the Regional Transit Authority (RTA). On the day of the accident, July 6, 1989, plaintiff, who was employed by New Orleans Tours, Inc. (NOT), was in the course and scope of her employment as a tour guide on a riverfront streetcar owned by the RTA and operated by Edward Jones, Jr., an employee of TMSEL. At the time that accident occurred, the streetcar on which plaintiff was working was at a complete stop. Another streetcar, owned by the RTA and operated by Kreutzer, an RTA maintenance worker in the course and scope of his employment, struck the rear of the streetcar on which plaintiff was conducting a tour. The force of the collision knocked her into the fare box and the handle used to open the streetcar door. The cause of the accident was brake failure on the streetcar operated by Kreutzer. As a result of the accident, plaintiff alleged that she sustained serious and permanent personal injuries.
Prior to the accident, the RTA entered into a public-private partnership agreement with the Riverfront Transit Coalition Group, Inc. (RTCG) and the City of New Orleans (City) to establish a Riverfront Streetcar Line in the City of New Orleans.
Pursuant to the agreement, RTA agreed to operate the streetcar line and in turn entered into an agreement with TMSEL for the day-to-day operation of the line; RTCG agreed to provide tour guides and in turn entered into an agreement with NOT (plaintiff's employer) to provide tour guides to RTA and TMSEL for the Riverfront Streetcar Line. Plaintiff was working in the capacity of tour guide on the RTA streetcar at the time of her accident.
Prior to trial, defendant RTA filed an exception of no cause of action and a motion for summary judgment contending that RTA was plaintiff's statutory employer and that plaintiff's exclusive remedy against defendant was for workman's compensation benefits under La.R.S. § 23:1032. In denying the exception and motion for summary judgment, *798 the trial court held that plaintiff was not a statutory employee of the RTA.
Also prior to trial, a petition of intervention was filed by NOT's workers' compensation insurer, Presidential Fire & Casualty Insurance Co. (PF & C) which was paying plaintiff's medical and employment benefits. PF & C was subsequently placed in liquidation and all parties were enjoined from prosecution or adjudication of any rights of PF & C. After PF & C's insolvency, plaintiff's direct employer, NOT, continued payment of compensation benefits. As a result, a petition of intervention was filed by NOT in which NOT sought reimbursement for compensation benefits and medical expenses paid pursuant to the workers' compensation law. Louisiana Insurance Guaranty Association (LIGA) later assumed the obligations of PF & C and began making the compensation payments. LIGA subsequently fully reimbursed NOT for all compensation and medical benefits it paid to plaintiff. Notice of trial was not sent to either NOT nor PF & C. However notice was sent to Allen Daigrepont (a LIGA representative). The matter proceeded to trial without NOT, LIGA or PF & C, none of which appeared or were represented by counsel at the trial.
On January 5, 1993, the trial court rendered judgment in favor of the plaintiff, dismissed defendants' statutory employer defense, and assessed damages which included general damages, past medical expenses, past lost wages and future lost wages. Further, the trial court cast the defendants in solido for future medical expenses for surgery to the lumbar spine.
Also on that date, the trial court rendered judgment in favor of LIGA, as intervenor, for the workers' compensation lien and ordered reimbursement to LIGA for medical expenses and compensation benefits paid to the date of trial, less plaintiff's attorney's fees. The court further ordered that LIGA be entitled to reimbursement for future compensation benefits out of the judgment.
Both plaintiff and defendants filed motions for new trial. Plaintiff, in her motion, contended that she was aggrieved by the trial court's judgment as it ordered that the defendants be cast in solido for the future medical expenses of surgery. Plaintiff requested that the court amend the judgment to award a sum certain for future lumbar surgery. Plaintiff's motion was heard and dismissed by the trial court. The defendants argued that the general damage award of $250,000 was excessive, that the court erred in awarding the cost of future lumbar surgery, that the intervention award to LIGA was improper because LIGA was not a party to the litigation, and that the court erred in awarding an expert witness fee to plaintiff's expert, Mr. Huval, since he did not testify in person at the trial. The defendants motion was heard and the trial court amended the original judgment to delete the award to LIGA because LIGA had not intervened in the lawsuit and to delete the expert witness fee award to Mr. Huval because he did not testify in person.
From the amended judgment, the defendants filed a devolutive appeal. Subsequently, defendants filed a petition to annul the judgment and a petition for injunctive relief on the grounds that the amended judgment was null and void for failure to comply with the mandatory notice requirements of La. C.C.P. Art. 1571 and Rule 10 § 4 of the Civil District Court Local Rules. The trial court issued a temporary restraining order enjoining plaintiff from executing on the judgment. A preliminary injunction as to the enforcement of the amended judgment was granted on the grounds that the amended judgment was rendered pursuant to an untimely motion for new trial and was therefore without legal effect. The trial court reasoned that the original judgment of January 5, 1993, from which no appeal was taken, was therefore a valid final judgment, and ordered that the temporary restraining order be dissolved.
In full and final satisfaction of the January 5, 1993 judgment, the defendants paid plaintiff the sum of $438,304.79, reserving all rights of defendants to prosecute their devolutive appeal and to seek reimbursement from plaintiff and her attorney in the event the judgment is reversed in whole or in part. The satisfaction of judgment was executed by plaintiff and her attorney and the compensation lien in favor of LIGA in the amount of *799 $77,726.08 was deducted from the payment to plaintiff as required by La.R.S. 23:1103.
LIGA filed a motion to intervene in the appeal in which it sought to become a party to the suit on the basis of compensation and medical benefits paid to and on behalf of plaintiff. The motion was granted by this court. LIGA then filed a reply brief, to which plaintiff responded with a motion to dismiss, or, in the alternative a motion to strike the reply brief. In her motion, plaintiff's reasons in support of the motion included the arguments that LIGA had not intervened in the trial court prior to judgment, that LIGA failed to file a timely appeal, and that LIGA failed to file an original brief, therefore it is precluded from filing a reply brief. This court held that LIGA was already an intervenor in this suit as the plenipotentiary successor in interest by operation of law to Presidential Fire & Casualty Company. LSA-R.S. 22:1382A(2). In response to plaintiff's argument that LIGA failed to file a timely appeal, this court held that since LIGA had never received notice of the signing of the amended judgment, appeal delays never commenced to run against it. The court recalled its order to allow LIGA to intervene and ordered that if LIGA wished to appeal it must apply to the trial court for an order of appeal. Subsequently LIGA filed an original brief as intervenor in which it prayed for the award of its compensation lien and credit for future compensation benefits.
Appellants assert six specifications of error on the part of the trial court in this action.
1. The trial court erred in holding that the defendants, the RTA and TMSEL, were not plaintiff's statutory employers thereby barring plaintiff's tort claim under La.R.S. 23:1032 and La.R.S. 23:1061.
2. Alternatively, the amended judgment of March 2, 1993 is null and void because of failure to comply with the mandatory notice requirements of La.C.C.P. Article 1571 and Rule 10 § 4 of the Civil District Court local rules.
3. Alternatively, the trial court erred in awarding plaintiff the cost of future medical expenses for lumbar surgery where plaintiff's own treating physician, Dr. Gerald Davis, testified that he was unable to state with reasonable medical probability that plaintiff will require future lumbar surgery and where plaintiff testified that she did not want future lumbar surgery.
4. Alternatively, the trial court erred in awarding past lost wages in the amount of $53,617 where the evidence supported an award of only $31,857.70 for past lost wages.
5. Alternatively, the trial court erred in awarding future lost wages in the amount of $42,694 where plaintiff failed to introduce any expert economic or actuary testimony.
6. Alternatively, the trial court erred in awarding $250,000 in general damages to a fifty-nine year old plaintiff who underwent a successful single level cervical fusion a C5-6.

STATUTORY EMPLOYER
In their first specification of error, appellants claim that the trial court erred in denying their exception of no cause of action and motion for summary judgment filed on August 14, 1991, holding that plaintiff was not a statutory employee of the RTA. The two contract defense[1] of statutory employer is an affirmative defense. Chauvin v. Jefferson Parish School Board, 595 So.2d 728, 730 (La.App. 5th Cir.1992). La.C.C.P. Art 1005 states that:
The answer shall set forth affirmatively arbitration and award, assumption of the risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake,... and any other matter constituting an affirmative defense ...
*800 This action was filed as a tort action against TMSEL, RTA and RTA's employee Kreutzer. In their answer, appellants pled the affirmative defenses of contributory and/or comparative negligence and assumption of the risk but failed to plead immunity from damages in tort based on the affirmative defense of statutory employer. Nor did they amend the pleadings at any time to include this affirmative defense. In fact they did not even bring the issue into the litigation until after they admitted to general liability and further admitted that the only issue to be tried was that of quantum. The defendant has the burden of proof in a statutory employer claim. Chauvin, at 730. Defendant did not affirmatively plead nor offer any proof of its claim of statutory employer prior to the judicial confession made by their attorney as to liability in this action.
The following proceeding took place in open court, on the record, in which counsel for defendants-appellants, RTA, TMSEL and Kreutzer admitted liability:
The Court: ... Also, there is another case that was filed in June 1990, but wasn't brought to the Court's attention until after the September Pre-Trial Conference,... So the Court is going to set up a status conference with Mr. Shea, the Minute Clerk who handles the pretrials, at the end of, I believe, February. And in the meantime, the Court's been advised that the defendants are going to stipulate liability in this matter?
Mr. Lewis[2]: Yes, sir.
The Court: Is that in both cases?
Mr. Lewis: Yes.
The Court: 90-4187 and 90-1254. And Mr. Lewis, on behalf of all three defendants, is stipulating liability, so the only issue to be tried are the issues of quantum?
Mr. Lewis: Yes, sir.
The Court: I presume the plaintiff will accept the stipulation?
Mr. Becnel:[3] Yes.
Appellee contends that by this stipulation or judicial confession, appellants expressly accepted and admitted tort liability because liability in tort was the only liability issue between the plaintiff and defendants which was before the Court.
Subsequent to the judicial confession or stipulation of liability, RTA filed a Peremptory Exception of No Cause of Action and Motion for Summary Judgment, submitted on memoranda, which were rejected by the Trial Judge in the following Reasons for Judgment:
For the reasons asserted by the plaintiff, the Court finds that there is a cause of action and that the plaintiff is not a statutory employer of the RTA.[4]
At the trial on December 21, 1992, RTA reiterated its stipulation of liability in the following exchange in open court:
Mr. Becnel: The issues of the statutory employer have already been decided by this court in a judgment which was previously rendered and liability has also been stipulated on the record. Essentially what we are here for today is to try the quantum aspect of the case. Ms. Davis has undergone various diagnostic tests such as thermograms, and various CT scans and MRIs. She had a cervical surgery and it's been recommended that she have lumbar surgery. So, essentially those are the issues that will be tried today.
Mr. Lewis: And Your Honor, having been the attorney initially assigned the matter I am in agreement with Mr. Becnel. We did in fact enter into a stipulation of liability. The one matter I would like to ask the court to reconsider, at least have it on the record, this matter, this particular problem, the quantum issue would be our motion for summary judgment based on statutory employer and basically *801 be urging those and the outline therein, because we do feel that this is a clear case of statutory employer and therefore confined basically to workmen's comp, but we are in fact in agreement on the other items referred to by Mr. Becnel.
The Court: Are you ready to proceed?
Mr. Becnel: Yes, Your Honor.
Mr. Lewis: Yes, Your Honor.
The Court: So liability is stipulated to. So the only issue before the Court is Quantum?
Mr. Lewis: Yes, sir.
The only parties present at the December 21, 1992 trial were the RTA, TMSEL and Kreutzer. No workers' compensation intervenors were present. Therefore, plaintiff argues, since plaintiff had sued defendants in tort, the stipulation of liability constituted a stipulation of tort liability. We agree.
La.C.C. Art. 1853 provides as follows: "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes a full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact." A judicial admission or confession is a party's express acknowledgment of the correctness of the fact or the act charged against him by his adversary. First Homestead Federal Savings and Loan Assoc. v. Coleman, 446 So.2d 551 (La.App. 3rd Cir.1984). Such a confession is designed to dispense with evidence and has the effect of withdrawing the subject matter of the confession from issue. Jackson v. Gulf Insurance Co., 250 La. 819, 199 So.2d 886 (1967). The stipulation amounts to full proof against those who made it and becomes the law of the case and must be enforced Lockett v. Home Insurance Company, 413 So.2d 230 (La.App. 4th Cir. 1982). It binds all parties and the court when not in derogation of the law. R.J. D'Hemecourt Petroleum Co. v. McNamara, 444 So.2d 600 (La.1983), cert. denied 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984). In D'Hemecourt, the court reasoned that although the argument was made that LSA-R.S. 47:1576 provided an exclusive means to judicially dispute tax assessments, the effect of the stipulation was to determine the law of the case and it cannot be revoked. The instant case is similar to D'Hemecourt in that the workers' compensation law provides an exclusive remedy for the employee against the employer or principal, yet the principal stipulated to liability in tort. Therefore, we find that the judicial confession made by the defendants established the law of the case. The defendants admitted to liability with only quantum to be an issue at trial. Since the issue of liability in the action was one in tort, defendant's stipulation of liability was reasonably interpreted by both the court and the plaintiff as being a stipulation to liability in tort.[5] By failing to affirmatively plead the defense of statutory employer and by making the general stipulation as to liability, the defendants forfeited their protection under the workers compensation exclusive provision. This specification of error is without merit.

AMENDED JUDGMENT
In their second specification of error, appellants allege that the amended judgment of March 2, 1993 is null and void for failure to comply with the mandatory notice requirements of La.C.C.P. Article 1571 and Rule 10 § 4 of the Civil District Court Local Rules. La.C.C.P. Article 1571 provides: "The district courts shall prescribe the procedure for assigning cases for trial by rules which shall: a) require adequate notice of trial to all parties." Rule 10 § 4 of the Civil District Court Local Rules provides:
"Additionally, the minute clerk of the division should mail to the attorneys of record in the case a notice of trial not less than twenty one days prior to the date fixed for said trial. In those cases where an assigned date for the trial of any case has been agreed to by all attorneys of record, either following a pre-trial conference or otherwise, not more than three days need be given by mail by the minute clerk of the division, unless all attorneys of record *802 waive such notice, in writing in which no mail notice need be given."
Appellants aver that PF & C did not receive notice of trial although prior to trial it filed an intervention as plaintiffs workers' compensation insurer. Notice of trial was mailed to counsel for the plaintiff, counsel for the defendants and to Allen Daigrepont, a representative of LIGA.[6] Appellants argue that because of the failure to notify PF & C of the trial date, PF & C did not appear and was not represented at trial, which adversely affected its substantive legal rights as well as its rights to due process of law. They further allege that the amended judgment does not recognize PF & C's statutory lien, which subjects defendants to paying the lien twice.
Appellee argues that appellants received notice of each and every trial date; therefore, there was no failure to comply with the provisions of Art. 1571 as applied to RTA and TMSEL. Therefore, the issue is whether defendants have standing to assert, on behalf of PF & C, an alleged deprivation of due process and fundamental fairness accorded by the La.C.C.P. Art 1571.
At the time of the setting of trial LIGA had assumed the accounts of PF & C however, they did not reimburse PF & C the money they paid to and on behalf of plaintiff. La.R.S. § 22:1382(A)(2) states that the association shall "be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." Since LIGA assumed the responsibilities of PF & C and it received the notice of trial, through their agent Allen Daigrepont, notice to the workers' compensation insurer was perfected, and the lack of formal notice to PF & C is harmless error. However, PF & C's claim for reimbursement should be acknowledged and the judgment amended to recognize PF & C's interest.

FUTURE MEDICAL EXPENSES
Appellants third specification of error alleges that the trial court erred in awarding plaintiff the cost of future medical expenses for lumbar surgery. They assert that plaintiff's attending physician was unable to state with reasonable medical probability that plaintiff will require future lumbar surgery and that plaintiff testified that she did not want the surgery. Future medical expenses must be established with some degree of certainty. Mistich v. Pipelines, Inc., 609 So.2d 921 (La.App. 4th Cir.1992), writ denied, 613 So.2d 996 (La.1993), cert. denied, ___ U.S. ___, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993). However, an award of future medical expenses is in great measure highly speculative and not susceptible of calculation with mathematical certainty. Id. Future medical expenses will be awarded where there is medical testimony that future medical expenses are indicated, and the medical testimony sets out the probable future medical costs. Poche v. Frazier, 232 So.2d 851 (La.App.4th Cir.1970), application denied, 256 La. 266, 236 So.2d 36 (1970). In the instant case, plaintiff's treating physician, Dr. Gerald Davis, testified that plaintiff was "well within a strong need, 50/50," for lumbar surgery and that the future medical expenses would likely be the same as the amount accrued before trial. He further testified that plaintiff would continue under his care for at least two to three years without surgery and if surgery was required, she would remain under his medical care for another five years following the surgery. Plaintiff testified that she was attempting to delay surgery for as long as possible, but when the pain became too bad she would undergo the procedure. There is ample evidence in the record to establish that, more probably than not, such medical treatment will be undertaken in the future. We do not find manifest error or abuse of discretion on the part of the trial court in awarding future medical expenses. Following the judgment the parties met and decided on a sum certain for future medical expenses. This specification of error is without merit.

PAST AND FUTURE LOST WAGES
Appellant's fourth and fifth specifications of error state that the court erred in *803 its awards of past lost wages in the amount of $53,617 and future lost wages in the amount of $42,694 because plaintiff failed to introduce any expert economic or actuary testimony. In regard to lost wages, appellants argue that the only evidence plaintiff offered on the amount of her past wage loss was the amount of workers' compensation benefits received through the date of trial in the amount of $31,857.20, and that she failed to prove any additional losses at the time of trial. Defendants contend that the only evidence in the record relating to the amount of plaintiff's past and future lost wages was the amount of workers' compensation paid, which amount was stipulated to by the parties. A review of the trial record shows that the stipulation was that the $31,857.20 was the amount received in past workers' compensation payments, not lost wages. The review further shows that at trial plaintiff informed the court that she was expecting a facsimile from Ernest Huval, plaintiff's actuarial expert, that afternoon. The facsimile was offered as evidence of the value of plaintiff's lost wages from July 6, 1989 through December 21, 1992, the trial date. Plaintiff further indicated that this report would be placed in the record. The court allowed the report admitted and defense counsel did not object nor did they present any evidence to the contrary. In accordance with Ernest Huval's calculations the trial court awarded $53,617.00 in past lost wages. The calculations of an actuarial expert merit substantial consideration by the trier of fact. Welton v. Falcon, 341 So.2d 564 (La.App. 4th Cir.1976) writs denied, 342 So.2d 872 (La.1977), 342 So.2d 1109 (La.1977). We find no error on the part of the trial court in this award. This specification is without merit.
In regard to the lost future wages, appellants argue that while plaintiff did present testimony of a vocational expert on the future loss of wage issue, plaintiff failed to present any testimony from an economist or actuary on the amount of plaintiff's wage loss. This is incorrect. Plaintiff offered a facsimile which was expected from Ernest Huval that day into the record which the court permitted. The defendants did not object to the offering of the facsimile into the record before it was received by the plaintiff although they were aware it would likely not arrive before the end of the trial. If a party fails to make a contemporaneous objection the issue may not be raised on appeal. La. Code of Evid. Art. 103(A)(2).
In the facsimile, the actuary opined that the lost wages from the date of trial through the work life expectancy would be $42,694. The trial court relied on this report in its award for loss of future wages. We find no error on the part of the trial court. This specification of error is without merit.

GENERAL DAMAGES
In their last specification of error, appellants allege that the trial court abused its much discretion in awarding $250,000 in general damages to a fifty-nine year old plaintiff who underwent a successful single level cervical fusion. This argument is flawed.
A review of the medical testimony by plaintiff's treating physician confirms that plaintiff underwent an anterior cervical discectomy and fusion at C5-6 for which her physician opined that she would have a 25% permanent physical impairment, additionally, the physical assigned a 10% permanent physical impairment at C3-4, for a combined permanent physical impairment of 35%. He further stated that plaintiff also injured her back, which would likely result in a second surgery (50-50) and that if she had the second surgery she would require an additional five years of medical care. Without the second surgery, she would require two to three more years of medical care. He maintained that she is disabled and unable to return to her work.
Plaintiff testified that she suffered from considerable pain and was unable to carry on her normal daily duties at home because of weakness in her leg. She requires a cane to walk because her knee "gives out" and she is afraid that she will fall. She further stated that she fears the second surgery and would prefer not to have it; however, if the pain gets to bad she will be forced to undergo the procedure.
"[T]he function of an appellate court is not `to decide what it considers an appropriate *804 award on the basis of the evidence', but rather only to review the exercise of the trier of fact's discretion in the matter." Reck v. Stevens, 373 So.2d 498 (La.1979) (citations omitted). A general damage award of $250,000 is within the trial court's discretion. In Hoffman v. Travelers Ins. Co., 587 So.2d 143 (La.App. 4th Cir.1991), the court awarded 275,000 for pain, suffering and mental anguish and $165,000 for future disability to a 37-year-old male who underwent a cervical discectomy and fusion at C5-6 and was assigned a 15%-20% anatomical disability rating. The court, in LeBouef v. Gross, 506 So.2d 879 (La.App. 1st Cir.1987), awarded $250,000 for injuries consisting of a ruptured and subsequently fused cervical disc, cartilage damage to one knee and a bulging lumbar disc which did not require surgery. Finally, in Villavaso v. State Farm Mutual Automobile Ins. Co., 424 So.2d 536 (La.App. 4th Cir.1982), an award of $250,000 was given to a 29 year old woman who suffered a 30% anatomical disability and a permanent 50% functional disability as a result of a neck injury.
Recently, the Supreme Court, in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), held:
the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages.... It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
The Court of Appeal accords great weight to factual findings and reasonable evaluations of credibility made by the trial court. ABC School Uniforms, Inc. v. Le Hig's Uniform Center, 446 So.2d 780 (La. App. 4th Cir.1984). The standard of appellate review has been defined in Rosell v. ESCO, 549 So.2d 840 (La.1989).
It is well settled that a court of appeal may not set aside a trial courts's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. For only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, at 844.
After a review of the testimony and the evidence and in light of the injuries sustained, the surgery undergone and probable future surgery, we conclude that the trial court did not abuse its much discretion in awarding this plaintiff a general damages award of $250,000.00.
For the above reasons, the January 5, 1993 judgment of the trial court is amended to recognize PF & C's claim for reimbursement for workers' compensation benefits paid to and on behalf of the plaintiff, otherwise the January 5th judgment is affirmed.
AFFIRMED AS AMENDED.
NOTES
[1] The "statutory employer" law, LSA-R.S. 23:1032, extends workers' compensation liability to two groups of "principals" other than direct employers. Those principals include those for whom the injured employee's work is part of their trade, business or occupation, one contract cases, and those who contract with the injured employee's direct employer to perform work which the principal has contracted with another to perform, two contract cases. See Humphrey v. Louisiana Power & Light Co., 546 So.2d 520, 522 (La.App. 4th Cir.1989).
[2] Mr. Lewis was counsel for the defendants.
[3] Mr. Becnel was counsel for the plaintiff.
[4] Plaintiff, in her Motion in Opposition to RTA's Exception of No Cause of Action and Motion for Summary Judgment argued that the Exception and Motion were not filed in compliance with Rule 8 § 2 of the Louisiana Rules of Court, Civil District Court Rules. West, 1993. Further plaintiff pointed out that defendant had, in open court, admitted to liability in the action.
[5] Plaintiff relied upon this stipulation and at the second trial did not subpoena her liability witnesses.
[6] PF & C went into insolvency and was taken over by LIGA prior to trial, therefore notice of trial to LIGA was proper.