I2CARTER, Judge.
This is an appeal from a trial court judgment in an action for damages.

FACTS

On January 1, 1993,[1] plaintiff, Clifton Timothy Terral, was a patron at the Waffle House restaurant in Hammond, Louisiana. After Terral had completed his breakfast, a waitress dropped a glass sugar container, causing it to fall to the floor and shatter. As a result of this incident, a piece of glass struck Terral’s left eye, causing injury. Ter-ral sought medical treatment and was diagnosed with an epithelial defect, i.e., an abrasion of the cornea. Terra! was treated with antibiotics and ointment, and a patch was placed over his left eye. By January 11, 1993, the abrasion had healed. Shortly thereafter, Terral complained of monocular diplopia with a ghosting of images (double vision) in his left eye.
On December 30, 1993, Terral filed an action for damages arising out of the January 1, 1993, incident, naming as defendants Waffle House, Inc. # 765 and its liability insurer, Employers Insurance of Wausau, A Mutual Company.
On August 15,1995, trial on the merits was held. On October 30, 1995, the trial court rendered judgment, finding that Terral’s diplopia was caused in part by the January 1, 1993, incident, and awarded Terral damages in the amount of $100,000.00.[2] The defendants appealed, assigning the following specifications of error:
1.The trial court erred in its finding of liability.
2. The trial court erred in its finding that plaintiff suffered ghost vision or diplopia as a result of the accident.
3. The trial court erred in its award of damages to plaintiff.

IsLIABILITY

The defendants contend that the trial court erred in finding them liable for Terral’s injuries because there was no proof of defendants’ negligence. With regard to liability, the trial court specifically found as follows:
There is very little doubt about liability. Plaintiff was in defendant’s place of business as a legitimate customer, seated at a table when an employee of defendant dropped a glass sugar bowl. The glass shattered and struck plaintiff in the eye.
The Court finds that defendant is totally at fault and liable for the injury to plaintiff.
The record reflects that the parties stipulated that, on January 1, 1993, Terral was a patron at the Waffle House restaurant in Hammond, Louisiana, when a waitress, Allison Simpson, during the course and scope of her employment, dropped a glass sugar container, causing it to fall to the floor and shatter. The parties further stipulated that, as a result of this incident, a piece of glass struck Terral’s left eye. However, defense counsel did not stipulate to liability.
It is well settled that a stipulation amounts to full proof against those who made it. Davis v. Kreutzer, 93-1498 p. 7 (La.App. 4th Cir. 2/25/94); 633 So.2d 796, 801, writ denied, 94-0733 (La.5/6/94); 637 So.2d 1050. It has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact. State v. Thornton, 611 So.2d 732, 736 (La.App. 4th Cir.1992). A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stevens v. Winn-Dixie of Louisiana, 95-0435 pp. 7-8 (La.App. 1st Cir. 11/9/95); 664 So.2d 1207, 1212; Stonecipher v. Mitchell, 26,575 p. 14 (La.App. 2nd Cir. *1168 5/10/95); 655 So.2d 1381, 1391. A court of appeal reviewing a decision based on stipulated facts is bound by the four corners of the stipulation. Successions of Verdon, 567 So.2d 119, 121 (La.App. 5th Cir.1990), writ denied, 572 So.2d 70 (La.1991).
In the instant case, once the parties stipulated to the facts regarding how the accident occurred, no further proof of those facts was necessary. The effect of the stipulation was that the defendants’ conduct fell below the standard of care required, Rthat the defendants’ actions were the cause in fact of Terral’s eye abrasion, and that the risk of harm was within the scope of protection afforded by the duty breached. Accordingly, the trial court determined that the defendants were liable for Terral’s damages. We cannot say that the trial court was clearly wrong in its determination.

CAUSATION

The defendants contend that the trial court erred in finding that plaintiffs diplopia was causally related to the January 1, 1993, incident.
In a personal injury suit, the plaintiff has the burden of proving by a preponderance of the evidence a causal connection between the injury sustained and the accident which caused the injury. The test for determining the causal connection between the accident and the subsequent injury is whether the plaintiff proved, through medical testimony, that it is more probable than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603 p. 3 (La.2/20/95); 650 So.2d 757, 759. The trial court’s finding regarding causation is a factual finding and must be reviewed under the manifest error standard of review. Housley v. Cerise, 579 So.2d 973, 979 (La.1991).
In the instant case, Terral testified that, on January 1, 1993, he was a patron at the Waffle House restaurant in Hammond, Louisiana. After completing his breakfast, Terral heard glass shattering and felt something strike him in the left eye and face. Terral subsequently realized that a waitress, Allison Simpson, had dropped a glass sugar container on the floor, causing it to shatter. At the time of the accident, Terral was thirty-seven years old and had been employed as a law enforcement officer with the Southeast ern University Police Department for approximately five years.
Terral testified that, after he left the restaurant, his left eye was red and irritated. Two days later, Terral sought medical attention at the Ochsner emergency room in New Orleans where his left eye was washed out, medication was applied, and a patch was placed over the eye. Terral was instructed to return the following day to see an ophthalmologist.
|sOn January 4, 1993, Terral consulted Dr. Constance L. Fry, an ophthalmologist at Ochsner Clinic. Dr. Fry performed an ophthalmologic examination on Terral and found a two millimeter by two millimeter epithelial defect with stromal edema and fold Descemet’s membrane in his left eye. According to Dr. Fry, the abrasion was “significant” because it was associated with stromal edema and fold Descemet’s membrane. Dr. Fry explained that an epithelial defect is an abrasion of the cornea, stromal edema is swelling of the cornea, and fold Descemet’s membrane relates to irregular folds in the cornea. According to Dr. Fry, these findings could have been consistent with an abrasion caused by a piece of glass striking Terral’s eye.
In taking Terral’s medical history, Dr. Fry discovered that Terral had been diagnosed with diabetes twenty-one years earlier and had undergone treatment in both eyes for diabetic retinopathy, which is bleeding in the retina. Dr. Fry felt that the corneal abrasion should have had no bearing on Terral’s diabetic retinopathy, but that the retinopathy could slow the healing of a corneal abrasion. However, Dr. Fry testified that Terral’s abrasion healed normally. According to Dr. Fry, the corneal abrasion did not appear to be related to Terral’s preexisting medical condition.
Dr. Fry treated Terral’s eye injury with antibiotics and an ointment and found that the visual acuity in Terral’s left eye had decreased. By January 8, 1993, Dr. Fry *1169 determined that there were epithelial ero-sions on the cornea of Terral’s left eye, which were “presumably” a result of the January 1, 1993, incident. According to Dr. Fry, Ter-ral’s symptoms had improved, but his vision had worsened due to the epithelial erosions. On January 11, 1993, Dr. Fry’s examination of Terral revealed that the epithelial erosions were no longer present, and the corneal abrasion had healed.
On February 17, 1993, Terral had a regularly scheduled retina appointment at the Ochsner clinic to cheek his retinopathy. Although Dr. Fry did not examine Terral at that time, she reviewed the clinic notes for that appointment and found that, according to the retinologists, Terral reported that he had been experiencing monocular diplopia in | phis left eye with ghosting of images. The clinic notes also state that a superficial corneal stromal haze was present in Terral’s left eye.
On May 28,1993, Terral consulted Dr. Fry with complaints of continued double vision in the left eye. Dr. Fry felt that the diplopia was possibly related to her previous findings following the January 1, 1993, incident, i.e., the corneal abrasion, stromal edema, and fold Descemet’s membrane. However, Dr. Fry testified that she could not state with any “probability” the cause of the diplopia.
Dr. Sanford L. Pailet, an ophthalmologist, testified that he performed an independent medical examination of Terral at the request of the defendants on January 3,1995. Prior to the examination, Dr. Pailet reviewed Ter-ral’s Ochsner medical records, as well as Terral’s medical records from the LSU Eye Center, which pre-dated the January 1,1993, incident. According to Dr. Pailet, the LSU medical records revealed that Terral had undergone several laser surgeries in both eyes for diabetic proliferative retinopathy during the years 1987 through 1989.[3]
Dr. Pailet’s examination of Terral revealed a small corneal scar in the inferior portion of his left pupil, which was the result of a healed corneal abrasion. According to Dr. Pailet, a corneal scar’s location in reference to the pupilary center is very significant, explaining that, if the scar is in the center of the pupil where light enters, it will split the light and can cause monocular diplopia and ghost imaging. Dr. Pailet indicated that diplopia occurring in only one eye means that there is a blockage in the visual access and that the blockage can be caused by a corneal scar, a cataract, a retinal problem, or a vitreous problem. According to Dr. Pailet, in the usual case, diabetic retinopathy does not cause diplopia. Dr. Pailet determined that, because Terral’s corneal scar was located below the straight line of visual access, it was not the cause of his diplopia. Rather, Dr. Pailet opined that the “probable” cause of Terral’s diplopia was a fibrous tuft, projecting from the optic nerve in the retina. According to Dr. Pailet, the |7fibrovascuIar tufting was not a result of the January 1, 1993, accident, but was a result of Terral’s diabetic retinopathy.
On cross-examination, Dr. Pailet acknowledged that Terral’s diplopia might have been caused by the glass striking him in the eye, stating that the diplopia possibly resulted from both the corneal haze and the fibrovas-cular tufting in the retina. Dr. Pailet testified that bilateral diplopia is common among diabetics, but acknowledged that Terral’s diplopia is present in only one eye.
Terral testified that, during the twenty-one years in which he suffered from diabetes, he never had a problem with double vision until shortly after the January 1, 1993, accident.
After considering all of the testimony and medical evidence, the trial court determined that Terral proved that his diplopia was causally related to the January 1, 1993, accident. Terral’s testimony indicates that, although he suffered from diabetes for twenty-one years and had been treated for proliferative retino-pathy, he never experienced any problems with diplopia until shortly after the January 1,1993, accident. Moreover, the medical records substantiate that Terral had no complaints of diplopia until after the January 1, 1993, accident. The testimony also established that bilateral diplopia is common among diabetics, but that Terral’s diplopia *1170 developed solely in his left eye, which is the eye that was affected by the January 1,1993, incident. After thoroughly reviewing the entire record in this matter, we find that a reasonable basis exists for the trial court’s finding that Terral proved the causal connection between the January 1, 1993, incident and his diplopia. Furthermore, we cannot say that the trial court’s finding is manifestly erroneous or clearly wrong.

QUANTUM

The defendants contend that the trial court abused its discretion in its general award of $100,000.00 in damages to Terral. The defendants argue that the award is excessive because: (1) the trial court found that the diplopia resulted only “in part” from the January 1, 1993, accident; (2) Terral underwent no surgery; (3) Terral was |8prescribed no pain medication; (4) Terra! missed only one week of work; and (5) Terral incurred medical bills of only $757.97.[4]
An award of “general damages” involves mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d 641, 654 (La.App. 1st Cir.), writs denied, 605 So.2d 1373 and 1374 (La. 1992). The primary objective of general damages is to attempt, with monetary compensation, to restore the injured party in as near to the state he was in at the time immediately preceding his injury. The factors to be considered in assessing quantum for pain and suffering are severity and duration. White v. Longanecker, 93-1122, p. 4 (La.App. 1st Cir. 5/23/94); 637 So.2d 1213, 1215, writ denied, 94-1704 (La.10/7/94); 644 So.2d 640.
Before a court of appeal can disturb a damage award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion in making the award. LSA-C.C. art. 2324.1; American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429, 433 (La.1991). The initial inquiry must always be directed at whether the trial court’s award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact’s much discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Louisiana Supreme Court noted that:
[T]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards to determine the | expropriate modification of the award. In such a review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. Theriot v. Allstate Insurance Company, 625 So.2d 1337, 1340 (La.1993). In instances where the appellate court is compelled to modify awards, the award will only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court. Theriot v. Allstate Insurance Company, 625 So.2d at 1340.
In the instant case, the trial court awarded Terral a “general award of $100,-000.00 covering his injury, disability, loss of enjoyment of life both past and future and all other damages.” Terral testified that the diplopia is constant and has affected his ability to perform his job as an officer with the Southeastern University Police Department. Terral explained that his vision problems require him to constantly double cheek himself to make sure he sees things correctly. Ter-ral testified that he has not informed his *1171 employer of this condition because he fears that, if he does, he will lose his job. According to Terral, the condition inconveniences him in everything he does; it restricts his reading, makes driving difficult, and interferes with watching movies and television. Dr. Fry testified that Terral’s diplopia could be a permanent condition and opined that there is no treatment available to Terral. Dr. Pailet testified that, if Terral’s diplopia resulted from the corneal scar, there is treatment available, but the “treatment is worse than the disease.” Dr. Pailet indicated that the treatment would consist of a corneal transplant, which would be a risky procedure for a diabetic.
We have thoroughly reviewed the entire record in this matter. We note that the trial court’s damage award encompasses all of Terral’s damages, including, among other things, general damages, past lost wages, and future loss of earning capacity. Although we find the damage award to be somewhat generous, we cannot say that it constitutes an abuse of the trial court’s vast discretion.

^CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed at defendants’ costs.
AFFIRMED.

. The petition and Terral’s testimony indicate that the date of the accident was January 1, 1993. However, the record contains some references to December 30, 1992, as the date of the accident. The date of the accident is not at issue in this appeal; therefore, for the purposes of this opinion, we will assume that the accident occurred on January 1, 1993.

. On November 3, 1995, the trial court signed a written judgment.

. Dr. Pailet explained that the laser procedures create small bums in the retina in order to decrease the need for oxygen in that area and, thus, decrease the bleeding.

. Terral's out-of-pocket medical expenses totaled $757.97.