# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**18-302 consolidated with 18-303**

**ERIC MARK ALLISON, ET AL.**

**VERSUS**

**CITGO PETROLEUM CORPORATION, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-2786 C/W 2007-3286
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Candyce G. Perret, Judges.

**GREMILLION, J., concurs and assigns written reasons.**

**PERRET, J., concurs with reasons.**

**AFFIRMED.**

**Robert E. Landry**
**Scofield, Gerard, Pohorelsky, Gallaugher & Landry**
**901 Lakeshore Drive – Suite 900**
**Lake Charles, LA 70601**
**Telephone: (337) 433-9436**
**COUNSEL FOR:**
     **Defendant/Appellant – CITGO Petroleum Corporation**

**Kirk Albert Patrick, III**
**R. Heath Savant**
**Donahue, Patrick & Scott**
**450 Laurel Street – Suite 1600**
**Baton Rouge, LA 70801**
**Telephone:  (225) 214-1908**
**COUNSEL FOR:**
    **Defendant/Appellee – R & R Construction, Inc.**

**Wells Talbot Watson**
**Bagget, McCall , Burgess**
**P. O. Drawer 7820**
**Lake Charles, LA 70606-7820**
**Telephone:  (337) 478-8888**
**COUNSEL FOR:**
    **Plaintiffs/Appellees – Robert D. Marshall, Tamara N. Marceaux, Daron Christopher Hidalgo, John Thomas Cochran, Gewan Papillion, Alfred Joseph Carrier, Eric Mark Allison, and Marcus Dwayne Clark**

**Marshall Joseph Simien, Jr.**
**Simien Law Firm**
**2129 Fitzenreiter Road**
**Lake Charles, LA 70601**
**Telephone:  (337) 497-0022**
**COUNSEL FOR:**
    **Defendant/Appellant – CITGO Petroleum Corporation**

**Richard Elliott Wilson**
**Cox, Cox, Filo, Camel & Wilson**
**723 Broad Street**
**Lake Charles, LA 70601**
**Telephone:  (337) 436-6611**
**COUNSEL FOR:**
    **Plaintiffs/Appellees – Gewan Papillion, Eric Mark Allison, Marcus Dwayne Clark, John Thomas Cochran, Daron Christopher Hidalgo, Tamara N. Marceaux, Alfred Joseph Carrier, and Robert D. Marshall**

**Craig Isenberg**
**Joshua O. Cox**
**Barrasso Usdin Kupperman Freeman & Sarver, L.L.C.**
**909 Poydras, Street – 24th Floor**
**New Orleans, LA 70112**
**Telephone:  (504) 589-9700**
**COUNSEL FOR:**
    **Defendant/Appellant – CITGO Petroleum Corporation**

**THIBODEAUX, Chief Judge.**

The defendant, CITGO Petroleum Corporation (CITGO), appeals the trial court's judgment denying its motion for summary judgment on the issue of statutory employer immunity. The dispute arose following a release of toxic slop oil and fumes and wastewater for which CITGO stipulated fault. Finding genuine issues of material fact and law, we affirm the trial court's judgment denying CITGO's motion for summary judgment.

## I.

## <u>ISSUES</u>

We must decide whether the trial court erred in denying CITGO's motion for summary judgment on the issue of statutory employer immunity.

## II.

## <u>FACTS AND PROCEDURAL HISTORY</u>

A heavy rainfall on June 19, 2006, flooded CITGO's waste treatment facility, and CITGO released toxic slop oil and wastewater into the Calcasieu River and surrounding waterways. On the same date, CITGO also released toxic fumes, hydrogen sulfide ($H_2S$) and sulfur dioxide (S02), into the air. It is estimated that close to 1,000 people filed tort suits in the Lake Charles area based upon injuries caused by the toxic releases. Trials have been ongoing, and many damages have been awarded.

In the months following the releases, CITGO hired various local companies/contractors to clean the oil and sludge from the waterways, exposing additional workers to the toxic liquid and fumes. On September 19, 2008, CITGO

filed an Admission of Fault for the releases as to "all cases" filed by the law firm of Baggett McCall and the firm of Cox, Cox, Filo, Camel & Wilson. In the Admission, CITGO stated that it would "pay plaintiffs for all their compensatory damages, if any" which they could prove were proximately caused by the releases on June 19, 2006. The present Plaintiffs were party litigants at the time of the stipulation of fault.

In December 2016, over ten years after the releases and the initial cleanup activities, CITGO filed motions for summary judgment in the now-consolidated suits of *Eric Mark Allison, et al. v. CITGO Petroleum Corporation, et al.* (Trial Docket No. 2007-2786, Appeal No. 18-302) and *Wilvon Allison, el al. v. CITGO Petroleum Corporation, et al.* (Trial Docket No. 2007-3286, Appeal No. 18-303). Therein, CITGO asserted that it was the statutory employer of certain plaintiffs and was, therefore, immune from tort suits by those plaintiffs. In support of its motions, CITGO attached partial contracts containing language that it was the statutory employer of the contractors' employees.

At the combined hearing on the two above-listed motions for summary judgment on January 13, 2017, the trial court found the partial contracts inadmissible and denied CITGO's motions as to nine plaintiffs. The trial court mailed the consolidated judgment of denial on February 6, 2017. CITGO did not seek writs on the judgment. The plaintiffs proceeded to trial on the merits on damages and causation on February 13, 2017, and a consolidated final judgment awarding them damages was mailed in December 2017. CITGO did not raise the issue of statutory immunity at the trial on the merits; nor did it attempt to supply the missing parts of the contracts.

CITGO has now filed a suspensive appeal of the final judgment on causation and damages as to five plaintiffs working under three contractors, but it does not appeal any element of the damage awards.[1] Rather, CITGO appeals the earlier ruling denying CITGO's statutory employer status. The denial of a motion for summary judgment is an interlocutory judgment which is not subject to appeal. *See* La.Code Civ.P. arts. 968, 1841, and 2083. The only remedy is to request the appellate court to exercise its supervisory jurisdiction by applying for writs. *Louviere v. Byers*, 526 So.2d 1253 (La.App. 3 Cir. 1988) (citing *Batson v. Time Inc.*, 298 So.2d 100 (La.App. 1st Cir.1974)). The thirty-day time period for taking writs from the February 6, 2017 judgment denying summary judgment is long past. *See* Uniform Rules—Courts of Appeal, Rule 4-3.

However, while not addressing this exact procedural posture, where no part of the final judgment on causation and damages is being appealed, we have generally held that review of an interlocutory judgment may be obtained by assigning the issue as error in the unrestricted appeal of the final, appealable judgment to which it relates. *See Boquet v. Boquet*, 18-105 (La.App. 3 Cir. 3/21/18), 241 So.3d 1127; *Martinez v. Rivet*, 16-100 (La.App. 3 Cir. 4/13/16), 190 So.2d 461; *Babineaux v. Univ. Med. Ctr.*, 15-292 (La.App. 3 Cir. 11/4/15), 177 So.3d 1120. Here, where there was no objection to the appeal, we will review the denial of CITGO's motion for summary judgment. For the reasons that follow, we affirm the judgment of the trial court denying summary judgment on the issue of statutory employer immunity.

---

[1] Gewan Papillion was awarded a total of $24,140.00; Alfred Carrier was awarded $50,000.00; John Cochran was awarded $46,741.50; Earl Jones was awarded $45,920.00; and Wilvon Allison was awarded $35,796.58.

## III.

## STANDARD OF REVIEW

> Appellate courts review the grant or denial of a motion for summary judgment de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, p. 4 (La. 2/26/08), 977 So.2d 880, 882; La.Code Civ.P. art. 966(A)(3). The party that files a motion for summary judgment bears the burden of proof on the motion. La.Code Civ.P. art. 966(D). *If, however, the moving party will not bear the burden of proof at trial on the issue addressed in the motion* and points out that there is an "absence of factual support for one or more elements essential to the adverse party's claim, action, or defense[,]" *the non-moving party must then produce evidence showing that a genuine issue of material fact exists* "or that the mover is not entitled to judgment as a matter of law." La. Code Civ.P. art. 966(D)(1). *If the non-moving party then fails to produce such evidence,* "there is no genuine issue of material fact[,] and summary judgment will be granted." *Bufkin v. Felipe's La., LLC*, 14-288, p. 3 (La. 10/15/14), 171 So.3d 851, 854.

*Stutes v. Greenwood Motor Lines, Inc.*, 17-52, p. 5 (La.App. 3 Cir. 11/22/17), 234 So.3d 75, 80 (emphasis added).

## IV.

## LAW AND DISCUSSION

In these consolidated suits, CITGO contends that the trial court erred in denying it statutory employer status as to Gewan Papillion, Alfred Carrier, John Cochran, Earl Jones, and Wilvon Allison, where their direct employers/contractors had contracts with CITGO stating that CITGO was the statutory employer of the contractors' employees. The three contracts at issue are between CITGO and Miller Environmental Services, Inc. (Miller Environmental), Gulf Services

Mechanical, LLC (Gulf Services), and Angelle Concrete, Inc. (Angelle Concrete).[2] CITGO contends that it properly submitted the relevant portions of the three contracts, along with affidavits of CITGO's representatives, Jamie Boudreaux and Ray Hill,[3] proving CITGO's statutory employer status, and the trial court erred in excluding the contracts from evidence. CITGO further contends that Plaintiffs did not timely object to the incomplete condition of the contracts in their opposition brief in violation of La.Code Civ.P. art. 966(D)(2).

CITGO further argues that, even if Plaintiffs had objected timely, it was still error to exclude CITGO's offerings "since it is plaintiffs' burden, not CITGO's, to demonstrate to the trial court that the [missing portions of the] contract exhibits which were *not* offered [by CITGO] contained language which would somehow affect or change the statutory employer language in the primary portion of the contracts" (emphasis added). CITGO further contends that Plaintiffs were working pursuant to contracts giving CITGO statutory immunity from tort, and that Plaintiffs failed to present "any evidence creating a genuine factual issue concerning plaintiffs' status as statutory employees and, thus, CITGO was entitled to summary judgment." For the following reasons, we find no merit in any of CITGO's contentions.

---

[2]Gewan Papillion, Appeal No. 18-302, worked for Miller Environmental; Wilvon Allison, Appeal No. 18-303, worked for Gulf Services; Alfred Carrier and John Cochran, Appeal No. 18-302, worked for Angelle Concrete; and Earl Jones, Appeal No. 18-303, also worked for Angelle Concrete.

[3]Because the motions for summary judgment and the affidavits used by CITGO in both consolidated suits are substantively the same, we will refer to the motions in the singular and to the affidavits as singular, but the language and the context will supply the specific description of the document under review.

## *Timeliness of Plaintiffs' Objections to Contracts*

Before we address the contracts at issue, we will address CITGO's assertions regarding the timeliness of Plaintiffs' objections under La.Code Civ.P. art. 966(D)(2) (emphasis added), which states:

> The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. *Any objection to a document shall be raised in a timely filed opposition or reply memorandum.* The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.

CITGO filed its motions for summary judgment in both consolidated cases on December 9, 2016. Plaintiffs filed their oppositions in both consolidated cases on December 29, 2016. In the last paragraph of their opposition briefs in both cases, Plaintiffs state: "Third, CITGO's 'contracts' are incomplete and objectionable." This general objection followed nine pages of specific arguments on the flaws in CITGO's position. In particular, in Appeal No. 18-303, in the portion of the opposition brief regarding Wilvon Allison, he argues the incompleteness of two specific contracts:

> Moreover, the service agreement between Citgo and Gulf Services Mechanical is four pages. Nowhere in the four pages of that contract is there a statutory employer provision. And although the contract references Exhibits A, C, and D, those exhibits have not been produced as part of the contract. (See Exhibit 6, CITGO-Gulf Serv. Indus. LLC 0082- 105). In addition, Citgo did not produce the entirety of the August 4, 2006, service contract between Citgo and Gulf Services Industrial. That contract states that "Exhibits A-1, B-1, C, Attachment C-1, Attachment C-3, Exhibits E, F, J, M, N and Attachment G attached hereto are a part of this contract as is Company's Contractor's Manual (Latest Edition) by reference." *Id.* None of those exhibits or

attachments were produced. Thus, there is no written contract as required by law.

Thus, Plaintiffs' objections to the incomplete condition of CITGO's contracts were raised in timely filed oppositions in compliance with La.Code Civ.P. art. 966(D)(2). There is no merit to CITGO's assertion regarding timeliness.

## *Affidavits*

The affidavits of Ray Hill, dated December 8, 2016, state that he is CITGO's current Manager of Health, Safety, Security and Environmental Protection at the Lake Charles refinery. He attests that CITGO supplements its workforce as needed "by contracting with companies like" Miller Environmental, Gulf Services, and Angelle Concrete for construction, maintenance, and the remediation of environmental releases. He further attests that the work and materials supplied by these contractors were necessary to maintaining the refinery's equipment and safe operations, and that the activities performed by them were integral and essential to the operation of the refinery. Mr. Hill's affidavits briefly mention the spill on June 19, 2006, but they do not reference or attach any specific contracts or the dates of any contracts with the contractors. Nor do they reference any provision of any contract or discuss a statutory employment relationship between CITGO and the employees of the contractors.

The affidavits of Jamie Boudreaux, also dated December 8, 2016, state that he is CITGO's Manager of Purchasing and Materials at the Lake Charles refinery. Mr. Boudreaux's affidavits provide contract numbers and effective dates for the contracts, which are ostensibly attached to the affidavits. But the affidavits

7

do not attest to any provision in any contract or to a statutory employment relationship between CITGO and the employees of any of the three contractors.

### *Contracts*

The controlling law states, in pertinent part:

> [A] *statutory employer relationship shall not exist* between the principal and the contractor's employees, whether they are direct employees or statutory employees, *unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer.* When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

La.R.S. 23:1061(A)(3) (emphasis added).

### *Miller Environmental*

The contract with Miller Environmental[4] as attached to CITGO's motion for summary judgment consisted of only one typed page, even though the estimated cost of service was $5,740,000.00. The contract number was 4504176848, and the effective dates were June 27, 2006, through July 29, 2006. The bottom of the page was signed by Matt Dartez and Jamie Boudreaux. The next to last paragraph on the page stated that "Contractor agrees and recognizes that the Company shall be the Statutory Employer of all Contractor personnel

---

[4]Miller Environmental was Gewan Papillion's employer. Mr. Papillion points out that CITGO did not complete the contract with Miller Environmental until July 17, 2006, well after Mr. Papillion's exposure began. We note, the record indicates that Mr. Papillion was exposed the "week after" the spill on June 19, 2006, which would have been roughly June 26, 2006, and the effective date of the contract was June 27, 2006.

assigned to provide Services under this Agreement in accordance with the requirements of Louisiana Revised Statutes [sic] Section 23:1061A(3)."

The last paragraph on the page stated: "The Contract Exhibits A-1, B-1, C, C-1, C-2, E, F, J, L, M, N and O attached hereto are a part of this contract as is Company's Contractor's Manual (Latest Edition) by reference." *None* of the exhibits were attached. Mr. Boudreaux's affidavit stated that a "true and correct copy of Contract No. 4504176848" was attached. A true and correct copy was not attached. CITGO argued at the hearing that the exhibits were not relevant, but even after losing its motion for summary judgment because the contracts were incomplete, CITGO still did not produce the missing parts at the trial on the merits a month later. Moreover, we note that CITGO did not obtain an affidavit from Miller Environmental, the other party to the contract, to identify the contract or to testify as to the accuracy or intent of the contract.

We decided a case which is factually similar to this case and very instructive even though it is distinguishable from an evidentiary standpoint. In *Trent v. PPG Industries, Inc.*, 03-1068 (La.App. 3 Cir. 2/4/04), 865 So.2d 1041, the plaintiff worked for a contractor, Ron Williams Construction, and was injured by toxic fumes in the scope of his employment. He sued the project owner, PPG. PPG filed a motion for summary judgment asserting that PPG was the plaintiff's statutory employer pursuant to its contract with the contractor and was immune from tort liability. Among other arguments, the plaintiff asserted that the contract was invalid because the addendum containing the language from La.R.S. 23:1061 was inconsistent with the remainder of the contract, using a different format, page numbering, font style, and title. Because the addendum appeared after several exhibits, it was not intended to be part of the contract. The trial court found the

9

contract ambiguous and proceeded to determine the intent of the parties, stating as follows:

> The ambiguity in this case is whether the parties intended the addendum to be a part of the contract. The title of the addendum is not clear and explicit and therefore the court must ascertain the common intent of the parties. La. Civ.Code art. 2045. In this case, the *parties to the contract, PPG and Ron Williams, have stated via affidavit that the statutory employer provisions contained in the addendum have always been a part of the contract* incorporated by reference through the general terms and conditions; incorporation of this provision was contemplated by the parties and was their intent. The plaintiff has not provided the court with any evidence that establishes a genuine issue of fact concerning the intent of the parties to this contract. Because the common intent of the parties is determinative of the interpretation of the contract and no issue of fact is present as to the intent of these parties, this court finds that the statutory employer provision is a valid part of the contract between PPG and Ron Williams.

*Id*. at 1045 (emphasis added). The trial court went on to find that the *valid* contract created a presumption that the plaintiff failed to rebut after testimony that the work he did was an integral part of PPG's business.

> On appeal, we affirmed the trial court's judgment stating:
>
> PPG included, with its motion for summary judgment, the affidavits of Brandt Smith, the Chief Operating Officer of RWC, and that of Richard P. Andersen, the Manager of Purchasing for Defendant, PPG. Both men professed intimate familiarity with the contract between their respective companies and both agreed that the addendum adding the statutory employer provisions to the contract between the parties was meant to be part of the contract and reflected the true intent of the parties.

*Id*. at 1048.

Conversely, in the present case, CITGO did not offer the affidavits of *both* parties to the contract, but instead offered only the affidavits of CITGO's own

safety manager, Ray Hill, and CITGO's own purchasing manager, Jamie Boudreaux. Moreover, Boudreaux's affidavit stated that a true copy of the contract was attached. But CITGO failed to attach a true copy of the full contract, leaving out twelve exhibits and its contractor's manual which were incorporated by reference and described as part of the contract. And, the affidavits of Ray Hill and Jamie Boudreaux did not address the statutory employer provision at all. Accordingly, based upon our de novo review and careful examination of the partial contract proffered by CITGO, we find it inadmissible as summary judgment evidence.

*Angelle Concrete*

The contract with Angelle Concrete[5] as attached to CITGO's motion for summary judgment consisted of a "Blanket Purchase Order Contract," also known as "Blanket 261," with effective dates from 1994 through 1996. Blanket 261 stated that the "Purchase Order Terms and Conditions" attached as Exhibit A, and the "Blanket Order Instructions" attached as Exhibit B, as well as "Specifications for Cast-In-Place Concrete" attached as Exhibit C, were part of the contract by reference. Only Exhibit A was attached; Exhibits B and C were missing. Thus again, the contract with Angelle Concrete was incomplete as presented. An attached letter from CITGO in 1998 notified Angelle Concrete that its "Old Contract Number 261" was changed to "Outline Agreement Number 4600000059" under their newly-implemented system. Another letter from CITGO dated March 10, 2004, stated that "Outline Agreement Number 4600000059" was extended for three years with effective dates of April 1, 2004, through March 31,

---

[5]Angelle Concrete was the employer of Alfred Carrier, John Cochran, and Earl Jones.

2007. The new effective dates and contract number corresponded with Jamie Boudreaux's affidavit, which stated that he was attaching

> a true and correct copy of Outline Agreement Contract No. 46000000059 entered into in 1994 by Angelle Concrete, Inc. and CITGO for the delivery of "concrete," "admixtures" and "pumper truck services." The contract was renewed multiple times, including in 2004 for a three-year term that would include June and July 2006.

Again, CITGO did not attach a "true and correct copy" of the contract because it omitted Exhibits B and C of the contract. Exhibit A, "Purchase Order Terms and Conditions," consisted of nineteen paragraphs of CITGO's instructions to the "Contractor" or "Seller" regarding legal issues such as warranties on goods and services and indemnification provisions. Paragraph eighteen of Exhibit A contained the identical language regarding statutory employer status and La.R.S. 23:1061(A)(3) as that found in the Miller Environmental page discussed above. Exhibit A, however, did not contain dates, signatures, or initials; it did not contain any of the contract numbers discussed in Jamie Boudreaux's affidavit above, or any contract number at all; and it did not contain the name of the party to the contract, Angelle Concrete, referring only to the "Contractor" or "Seller."

There is nothing in Exhibit A to tie it to the contract with Angelle Concrete. Citgo did not obtain an affidavit from anyone at Angelle Concrete to identify the contract, discuss the intent of the parties, or confirm the statutory employer relationship in any manner consistent with *Trent v. PPG*, 865 So.2d 1041. And Jamie Boudreaux's affidavit, quoted above, did not address the statutory employer provisions in any manner. Accordingly, pursuant to our de novo review, we have carefully examined the partial contract proffered by CITGO and find it inadmissible as summary judgment evidence.

*Gulf Services Industrial*

The partial contracts and affidavit submitted by CITGO concerning Gulf Services Industrial is the most confusing and ambiguous of all. CITGO's motion for summary judgment in the Wilvon Allison suit (Trial Docket No. 2007-2786; Appeal No. 13-303) states as follows (citations to record omitted) (emphasis added):

> Gulf Services Industrial — Wilvon Allison: Allison was employed as a **truck driver** at Gulf Services Industrial for two and a half years beginning in 2004. ***One week after the spill, Allison was assigned to an oil spill clean-up crew*** at the CITGO LCMC that pressure washed and squeegeed oil in to a sump and disposed of it with a vacuum truck. Allison testified that he was working on cleaning up the oil spill in the dike area where the spill occurred.

CITGO's purchasing manager, Jamie Boudreaux, stated in his affidavit that, attached to the affidavit

> is a true and correct copy of Service Contract No. ***4504166195*** entered into by Gulf Services ***Industrial*** LLC, ("Gulf"), and CITGO for work commencing on ***July 6, 2006***. The contract provided for "complete decontamination of [tanks]," including "removal of oil residue and other work activity." (Service Contract No. 4504166195, p.1).

The Gulf Services Industrial contract referenced above has an effective date of July 13, 2006 and was not signed by Gulf Services Industrial until August 4, 2006. Mr. Allison's contamination exposure began around June 26, 2006, before the stated commencement date of the contract on July 6; before the stated effective date of the contract on July 13; and well before the contract was finalized on August 4. The next-to-last paragraph of the one-and-one-half-page contract contains the same statutory employer language as the previously discussed contracts. The last paragraph of the contract states as follows: "The Contract

13

Exhibits A-1, B-1, C, Attachment C-1, Attachment C-3, Exhibits E, F, J, M, N and Attachment G attached hereto are a part of this contract as is Company's Contractor's Manual (Latest Edition) by reference." None of these exhibits or attachments were included as evidence in CITGO's motion for summary judgment. Thus, the affidavit of Jamie Boudreaux was not accurate when it stated that a true and correct copy of the contract was attached.

Compounding matters, CITGO also attached a contract with Gulf Services *Mechanical* and stated that it applied to Mr. Allison as well. More specifically, the affidavit of Jamie Boudreaux (emphasis added) states that, attached to the affidavit

> is a true and correct copy of Service Outline Agreement Contract No. *4600004645* between Gulf Services *Mechanical*, L.L.C. ("Gulf") and CITGO that was effective on March 2, 2005 through July 31, 2007. Gulf Services Mechanical, L.L.C. agreed to perform "Shop Pipe Fabrication Services ... on a non-exclusive basis on the premises of [CITGO's] Lake Charles Manufacturing Complex."

CITGO applies this contract to Mr. Allison even though CITGO stated that Mr. Allison was a truck driver for Gulf Services *Industrial* from 2004 until he was reassigned to a spill clean-up crew a week after the spill in June 2006. CITGO asserted that Mr. Allison was assigned under the Gulf Services *Industrial* contract to perform cleanup activities using a pressure washer and vacuum truck. Shop pipe fabrication under the Gulf Services *Mechanical* contract is difficult to reconcile with the other facts. Moreover, the Gulf Services *Mechanical* contract is also missing Exhibits C and D.

Based upon the foregoing, after careful examination of these partial contracts proffered by CITGO, we find them inadmissible as summary judgment evidence.

## *Burden of Proof*

CITGO has essentially asserted that it is the plaintiff's burden of proof to demonstrate to the court that the missing parts of the contracts in CITGO's proffer will negate the portions presented that show statutory employer status. We disagree. Louisiana Code of Civil Procedure Article 966(D)(1)[6] states that if the moving party does *not* have the burden at trial on the issue raised by its motion for summary judgment, then, and only then, must the non-moving party produce evidence of a genuine issue of material fact or law precluding summary judgment.

As stated in *Trent v. PPG*, 865 So.2d at 1047 (quoting *Maddox v. Superior Steel*, 00-1539, pp. 3-4 (La.App. 1 Cir. 9/28/01), 814 So.2d 569, 571-72 (footnote omitted)):

> The initial burden of proof remains with the mover and is not shifted to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." *See Scott v. McDaniel*, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-1192, *writ denied*, 97-1551

[6]D. (1) The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966.

15

(La.9/26/97), 701 So.2d 991.  If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted.  La.Code Civ. P. arts. 966 and 967.

Here, however, because CITGO's contracts were found inadmissible at the hearing on January 13, 2017, when the trial on the merits occurred exactly one month later in February, CITGO *still had the burden of proof on the issue of the missing parts of the contracts, and CITGO did not produce the missing parts.* Based upon the final judgment and the reasons and supplemental reasons for judgment, the only issues at trial were causation and damages; neither the issue nor the contracts pertaining to statutory immunity ever came up at trial.  Thus, the burden or persuasion never shifted to Plaintiffs because CITGO never produced whole contracts and, therefore, never properly supported its motion or carried its initial burden of proof.

### *CITGO's Stipulation to Fault & Liability for Compensatory Damages*

The above analyses are firmly buttressed, if not overridden, by the fact that for over eight years CITGO did not act as a statutory employer by indemnifying Plaintiffs in any manner for their exposure to the toxic waste. Rather, CITGO stipulated to fault in the tort suits on September 19, 2008.  On that date, CITGO filed an Admission of Fault stating that it would "pay plaintiffs for all their compensatory damages, if any, which plaintiffs are able to prove to the court were proximately caused by the releases of the materials into the air and waterways from the CITGO refinery in Calcasieu Parish Louisiana, on or about June 19, 2006."  The admission then stated, "CITGO denies that it is liable for any punitive damages, and avers that plaintiffs have no cause of action for punitive damages." Since each Plaintiff proved his injuries and causation at trial, and was awarded

damages for his exposure in 2017, CITGO's earlier stipulation of fault and promise

to pay all compensatory damages must be examined as a judicial confession that

cannot be revoked.  More specifically, La.Code Civ.P. art. 1853 states:

> A judicial confession is a declaration made by a party in a judicial proceeding.  That confession constitutes full proof against the party who made it.
>
> A judicial confession is indivisible and it may be revoked only on the ground of error of fact.

Likewise, our jurisprudence provides:

> A judicial admission or confession is a party's express acknowledgment of the correctness of the fact or the act charged against him by his adversary.  *First Homestead Federal Savings and Loan Assoc. v. Coleman*, 446 So.2d 551 (La.App. 3rd Cir.1984).  Such a confession is designed to dispense with evidence and has the effect of withdrawing the subject matter of the confession from issue. *Jackson v. Gulf Insurance Co.*, 250 La. 819, 199 So.2d 886 (1967).  The stipulation amounts to full proof against those who made it and becomes the law of the case and must be enforced. *Lockett v. Home Insurance Company*, 413 So.2d 230 (La.App. 4th Cir.1982).  It binds all parties and the court when not in derogation of the law.  *R.J. D'Hemecourt Petroleum Co. v. McNamara*, 444 So.2d 600 (La.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984).  In *D'Hemecourt*, the court reasoned that although the argument was made that LSA-R.S. 47:1576 provided an exclusive means to judicially dispute tax assessments, the effect of the stipulation was to determine the law of the case and it cannot be revoked. The instant case is similar to *D'Hemecourt* in that the workers' compensation law provides an exclusive remedy for the employee against the employer or principal, yet the principal stipulated to liability in tort. Therefore, we find that the judicial confession made by the defendants established the law of the case.  The defendants admitted to liability with only quantum to be an issue at trial.  Since the issue of liability in the action was one in tort, defendant's stipulation of liability was reasonably interpreted by both the court and the plaintiff as being a stipulation to liability in tort.

*Davis v. Kreutzer*, 93-1498 (La.App. 4 Cir. 2/25/94), 633 So.2d 796, 801, *writ denied*, 94-733 (La. 5/6/94), 637 So.2d 1050.

Here, having confessed to liability for all compensatory damages proved in court, CITGO cannot now appeal on the basis that it does not owe the compensatory damages proved at trial because of immunity. *See* La.Code Civ.P. art. 2085. The only appeal left for CITGO was the appeal of the trial court's finding of causation and the amounts of its awards of compensatory damages, which CITGO has decided not to appeal or assign as error. It cannot now complain that it did not withdraw the issue in September 2008.

### *Discovery Violations*

Additionally, as articulated by Plaintiffs, CITGO did not timely respond to Plaintiffs' 2008 discovery requests for documentation supporting CITGO's affirmative defenses. While CITGO argued at the hearing that it had finally supplemented discovery in October of 2016, Plaintiffs point out:

> Citgo did not properly identify the documents it is now relying on regarding these specific plaintiffs. Plaintiffs sent Citgo the above Interrogatories and Request for Production on behalf of each specific plaintiff. If Citgo wanted to assert statutory employer immunity as a defense to Mr. Alfred Carrier's claim, it should have properly identified and produced the entire contract between Citgo and Angelle Concrete. The same should have been done for the two other Angelle Concrete employees, Mr. John Cochran and Mr. Earl Jones. What Citgo did, however, was effectively a "document dump" by providing thousands of bates numbers that reference millions of pages of documents.
>
> Citgo then contends that it produced the specific contract at issue. However, what Citgo produced is a haystack, leaving Plaintiffs to look for the needle. This is improper production of discovery.

The duty to timely supplement discovery under La.Code Civ.P. art. 1428 is well-settled, and our jurisprudence is replete with examples of sanctions imposed or exclusion of evidence or testimony due to a negligent or willful failure to disclose new or requested information. *See Buxton v. Evans*, 478 So.2d 736 (La.App. 3 Cir.), *writ denied*, 479 So.2d 921 (La.1985); *Louisiana Resources Co. v. Greene*, 406 So.2d 1360 (La.App. 3 Cir. 1981), *writ denied*, 412 So.2d 84 (La.1982); *Maddox v. Bailey*, 13-564 (La.App. 1 Cir. 5/19/14), 146 So.3d 590; *Krepps v. Hindelang*, 97-980 (La.App. 5 Cir. 4/15/98), 713 So.2d 519; *Lodrigue v. Houma-Terrebonne Airport Com'n*, 450 So.2d 1004 (La.App. 1 Cir. 1984). Likewise, partial contracts withheld for eight years easily fall into the category of inadmissible evidence under our discovery rules as well.

V.

**CONCLUSION**

Pursuant to our de novo review, and for all of the foregoing reasons, the judgment of the trial court denying summary judgment to CITGO on the issue of statutory immunity is affirmed. Costs of this appeal are assessed to the defendant, CITGO Petroleum Corporation.

**AFFIRMED.**

19

**ERIC MARK ALLISON, ET AL.**

**VERSUS**

**CITGO PETROLEUM CORPORATION, ET AL.**

**GREMILLION, Judge, concurs and assigns the following reasons:**

I concur in the result reached in this matter on the basis of CITGO's stipulation to fault and liability. I disagree with the majority's reasoning regarding CITGO's motion for summary judgment. The affidavits and attached contracts should not have been excluded from evidence on the motion for summary judgment. It was not CITGO's burden to prove that the omitted portions of the contracts did not address the statutory employment issue; rather, it became the plaintiffs' burden to prove that they did. The contracts should have been admitted and considered on the motion.

18-302 consolidated with 18-303

ERIC MARK ALLISON, ET AL.
VERSUS
CITGO PETROLEUM CORPORATION, ET AL.

**PERRET, CANDYCE, J.  CONCURS WITH REASONS:**

I respectfully concur.  Although I agree with the majority opinion that "review of an interlocutory judgment may be obtained by assigning the issue as error in the unrestricted appeal of the final, appealable judgment to which it relates," I find that this court should review the denial of Citgo's motion for summary judgment on the issue of statutory employer immunity on the *entire record* since the case has been fully tried.  As stated by the Louisiana Supreme Court in *Hopkins v. American Cyanamid Company,* 95-1088 (La.1/16/96), 666 So.2d 615, 624:

> [O]nce a case is fully tried, the affidavits and other limited evidence presented with a motion for summary judgment--later denied by the district court--are of little or no value.  Appellate courts should not rule on appeal after a full merits trial on the strength alone of affidavits in support of a motion for summary judgment that was not sustained in the district court.  In such cases, appellate courts should review the entire record.

Because Citgo failed to raise the issue of statutory employer immunity at trial and because it did not attempt to supply the missing parts of the partial contracts throughout the litigation, I find, based upon my review of the entire record before us, no merit in Citgo's assignment of error that the trial court erred in denying its motion for summary judgment.